**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Craig C. WIRSING, Defendant-Appellant.**

No. 82–1304.

United States Court of Appeals,
Sixth Circuit.

Argued March 29, 1983.

Decided Oct. 10, 1983.

David F. DuMouchel, argued, Detroit, Mich., for defendant-appellant.

Leonard R. Gilman, U.S. Atty., Elizabeth Wild, argued, Detroit, Mich., for plaintiff-appellee.

Before KEITH and MARTIN, Circuit Judges and PORTER *, District Judge.

KEITH, Circuit Judge.

Appellant Craig Wirsing appeals from a judgment entered against him after a jury trial in this criminal case. Wirsing was charged with one count of conspiracy to possess with intent to distribute marijuana [1] and three counts of attempted income tax evasion [2] for the years 1976, 1977, 1978. The jury convicted him on all counts. For the reasons set forth below, we reverse the convictions and remand for a new trial.

---

* Hon. David S. Porter, Senior United States District Judge, Southern District of Ohio, sitting by designation.

1. 21 U.S.C. §§ 841(a)(1) and 846.

2. 26 U.S.C. § 7201.

## FACTS

The government's theory of illegal activity centered around Wirsing's alleged role as a drug dealer. The government's evidence indicated that Wirsing was involved in drug activities as early as 1972. During that time, he bought marijuana from a man named Roy Griffith. His purchases were not small. In fact, Wirsing's sister testified that she observed a mound of marijuana measuring five feet by four feet by one foot on the basement floor of their home. Patrick Bolerjack, one of Wirsing's associates, also testified that he watched the defendant's business grow. There appeared to be some dispute as to whether Wirsing was in business for himself or was part of an organization.

Wirsing appears to concede that he was initially part of a group that included Roy Griffith and Frank Reynolds. However, Douglas Skinner, to whom the defendant allegedly supplied marijuana for sale, testified that in late 1973, Wirsing told him that he was no longer dealing with that group. He also ordered Skinner to stay away from them.

Since Wirsing's defense was that he left the conspiracy in 1973 and that the applicable statute of limitations had run,[3] the government sought to introduce evidence that Wirsing had performed acts in furtherance of the conspiracy beyond that date. It introduced testimony that in late 1973 the defendant purchased a Norwegian fishing boat for use in transporting marijuana from Colombia to the United States. The boat was purchased in the defendant's name, but Griffith, Bolerjack and Reynolds contributed money to repair it. The boat, the Salo, sank on its maiden voyage.

Skinner ran trips from the West for Wirsing. These trips usually originated in Tuscon, Arizona. On one trip in 1974, he was arrested and the marijuana confiscated. He had no further dealings with any member of the group for the following year. When he did return, he allegedly had contact only with Wirsing.

Although the defendant stated that he was no longer working with Griffith and his group in late 1974 and early 1975, he was a supplier for Jackie D. Miller. Miller obtained most of his marijuana from Griffith. Terry Jelnik, a drug dealer, testified under a grant of immunity. He stated that he started buying his marijuana from Wirsing in 1976. He had been buying from Griffith the year before, but when he went to meet Griffith at a cabin in Holly, Michigan, Wirsing was there. Other evidence adduced at trial indicated that Wirsing owned the cabin. Jelnik testified that after the initial meeting, whenever he went to the cabin, he either dealt with Griffith, Wirsing, or both.

Bolerjack testified that by 1975, the group that had invested in the Salo had disbanded. Bolerjack left the group in 1977. At that time, Wirsing was allegedly still supplying marijuana to dealers and Skinner was still selling for him. Wirsing's sister testified that the business relationship between Wirsing and Griffith changed during the end of 1974 or early 1975 due to constant "fighting".

Along with the conspiracy count, the government alleged three counts of income tax evasion for the years 1976, 1977, and 1978. The charges of tax evasion were derived from Agent Bednaczyk's calculation of Wirsing's net worth for the year ending December 31, 1975, the last year of defendant's legitimate tax returns. The evidence at trial was lengthy and complicated. The government introduced 362 exhibits in an attempt to prove income tax evasion under a net worth theory.[4]

---

**3.** 18 U.S.C. § 3282 provides:

Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

The indictment charged a conspiracy beginning on or about January 1, 1972 and continuing up until the date of the filing of the indictment [August 27, 1981]. The defendant attempted to show that he had committed no act in furtherance of the particular conspiracy charged in the indictment after August 26, 1976.

**4.** The net worth theory is an indirect method of proving tax evasion. The government is allowed to show inferentially from the existence of purchases, expenditures, and cash on hand

The jury deliberated two days and returned a guilty verdict on all counts. Wirsing was eventually sentenced to a term of five years imprisonment on the conspiracy count and three three-year terms on the tax evasion counts to run concurrently with the conspiracy term. Wirsing is free pending the outcome of his appeal.

## JOINDER UNDER RULE 8(A)

■■■ While the defendant raises several issues on appeal, our discussion of the joinder issue renders discussion of the other issues unnecessary.[5] We conclude that the district court abused its discretion by not granting the defendant's motion for a severance of the conspiracy and tax evasion charges.

Fed.R.Crim.P. 8(a) provides:

> that the defendant received income that was not reported on his or her tax return. The assumption is that all of the income is taxable unless the defendant can show otherwise.
>
> The net worth method of proving tax evasion was approved by the Supreme Court in *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). However, the Court cautioned the district and appellate courts about its use in the following paragraph:
>
> > While we cannot say that these pitfalls inherent in the net worth method foreclose its use, they do require the exercise of great care and restraint. The complexity of the problem is such that it cannot be met merely by the application of general rules. Cf. *Universal Camera Corp. v. Labor Board,* 340 U.S. 474, 489 [71 S.Ct. 456, 465, 95 L.Ed. 456]. Trial courts should approach these cases in the full realization that the taxpayer may be ensnared in a system which, though difficult for the prosecution to utilize, is equally hard for the defendant to refute. Charges should be especially clear, including, in addition to the formal instructions, a summary of the nature of the net worth method, the assumptions on which it rests, and the inferences available both for and against the accused. Appellate courts should review the cases, bearing constantly in mind the difficulties that arise when circumstantial evidence as to guilt is the chief weapon of a method that is itself only an approximation.
>
> *Id.* at 129, 75 S.Ct. at 132.

**5.** It is argued that the district court erred by refusing to allow Skinner to testify that Wirsing told him that he was leaving the alleged conspiracy. While resolution of this issue is

(a) JOINDER OF OFFENSES. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

As the language makes clear, joinder under this subsection is permissive. To the extent that it is consistent with providing the defendant with a fair trial, the Rule is to be construed liberally to promote the goals of trial convenience and judicial efficiency. *See United States v. Isaacs,* 493 F.2d 1124, 1158 (7th Cir.1974), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974); *Drew v. United States,* 331 F.2d 85, 88

not necessary to our holding, we address it here for the sake of judicial economy.

The defendant argues that his statement to Skinner was an exception to the hearsay rule because it constituted a statement by one co-conspirator to another indicating an intention to leave the conspiracy. The district court correctly noted that if admissible at all, it was only admissible to prove that it was said, but not as evidence that the defendant actually left the conspiracy. The court later ruled the statement inadmissible.

We find no error in the court's ruling. First, upon review of the trial transcript, we conclude that the defendant got this evidence before the jury in spite of the court's ruling. Second, we question the probative value of such a statement as evidence of a verbal act of withdrawal. In the cases cited by the defendant, the statement was made by one co-conspirator to another to communicate the fact that he was withdrawing from the conspiracy. In this case, the person to whom the statement was made was a subordinate and the defendant told him not to have anything else to do with the other members of the conspiracy. It is difficult to see how this could be an affirmative act of withdrawal since it was not communicated to any member of the alleged conspiracy who would be affected by it. In other words, Skinner's relationship to the defendant remained unchanged no matter what the defendant did after professing to quit the conspiracy. Under these circumstances, the refusal to admit the statement as an exception to the hearsay rule is not error.

(D.C.Cir.1964). *See also* J. Moore, 8 Moore's Federal Practice ¶ 8.05 (2d ed. 1976); C. Wright, Federal Practice and Procedure, 1 Criminal § 141 (2d ed. 1982); Note, *Joint and Single Trials Under Rules 8 and 14 of the Federal Rules of Criminal Procedure,* 74 Yale L.J. 553 (1965).

The government argues that joinder was permissible in this case because the conspiracy charges and tax evasion charges constituted "two or more acts or transactions connected together or constituting parts of a common plan or scheme." It contends that the income that was not reported on Wirsing's return for the years in question was derived from his illegal activity in the conspiracy to distribute drugs.

■ We agree that joinder of these charges was proper under Rule 8(a). As the Ninth Circuit noted in a similar case:

> The evidence on the conspiracy count and the tax counts overlapped. Evidence of Anderson's expenditures in 1976 and 1977 was relevant to Count I, because it created the inference that the money for the expenditures came from the narcotics conspiracy (citations omitted). The financial evidence on the conspiracy counts was relevant to the tax counts, because it showed the source of Anderson's unexplained wealth.

*United States v. Anderson,* 642 F.2d 281, 284 (9th Cir.1981). The court in *United States v. Shelton,* 669 F.2d 446 (7th Cir. 1982), *cert. denied,* 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 454 (1982) also approved the joinder of counts involving a conspiracy to commit mail fraud and tax evasion, noting that the tax counts charged the defendants with "failure to pay income on the proceeds of the scheme to defraud." *Id.* at 460. *See also United States v. Isaacs,* 493

F.2d at 1159 (joinder under Rule 8 proper where the "underlying crime generated the income tax violations").

The defendant argues that joinder was impermissible because evidence of the tax evasion charges would have been inadmissible in a separate trial on the conspiracy charges. Where the evidence on the charges is not mutually admissible in separate trials, the defendant argues, joinder of those charges is not permitted.[6] We disagree.

■ Rule 8(a) does not require that all evidence relating to each charge be admissible in separate trials. Rather, "[w]hen the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate." *Anderson,* 642 F.2d at 284. *See also United States v. Roselli,* 432 F.2d 879 (9th Cir.1970), *cert. denied,* 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971) (joinder of defendants proper under Rule 8(b) where the only evidence not admissible against all defendants in a conspiracy trial is that relating to tax returns); *United States v. Barrett,* 505 F.2d 1091 (7th Cir. 1974), *cert. denied,* 421 U.S. 964, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975) (joinder under Rule 8(a) permissible where mail fraud charges and tax evasion charges all were connected with the defendant's use of his public office for private gain).

We are satisfied that the government alleged and introduced proof sufficient to establish a nexus between the drug charges and the tax evasion charges. *Compare United States v. Diaz-Munoz,* 632 F.2d 1330, 1335–36 (5th Cir.1980) *with United States v. Beasley,* 519 F.2d 233, 238 (5th Cir.1975), *vacated on other grounds,* 425 U.S. 956, 96 S.Ct. 1736, 48 L.Ed.2d 201 (1976). Discuss-

---

**6.** The defendant's argument would have more force if the government's joinder was based upon two or more acts which were of the same or similar character. Several courts have recognized the peculiar dangers of joining such offenses and have adopted a test which requires that evidence concerning the two joined offenses be mutually admissible in separate trials before joinder is considered appropriate. *See United States v. Halper,* 590 F.2d 422, 431 (2d Cir.1978); *United States v. Foutz,* 540 F.2d

733, 736–37 (4th Cir.1976); *Blunt v. United States,* 404 F.2d 1283, 1288 (D.C.Cir.1968), *cert. denied,* 394 U.S. 909, 89 S.Ct. 1021, 22 L.Ed.2d 221 (1969); *Drew v. United States,* 331 F.2d 85, 90 n. 12 (D.C.Cir.1964). However, even under those circumstances, not every item of evidence need be admissible in a separate trial. The rule "rather looks to the broad sense to whether the rules relating to 'other crimes' have been satisfied." *Foutz* 540 F.2d at 736 n. 3.

ing the distinction between the result in these two cases, the court in *United States v. Kopituk,* 690 F.2d 1289, 1313 (11th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983) stated:

> Thus, the decision in *Diaz-Munoz* was based upon the government's failure to prove a nexus between the tax and non-tax counts and does not, as appellants argue, stand for the proposition that joinder of tax and non-tax offenses in a single indictment is per se improper. Indeed, there would be no legal or logical basis for such a rule and, in fact, there is ample authority supporting the position that tax counts can properly be joined with non-tax counts where it is shown that the tax offenses arose directly from the other offenses charged (citations omitted).
>
> Assumably, had the government been able to fulfill its pretrial representation that the evidence would establish that the unreported income charged in the tax counts constituted the proceeds of the embezzlement and/or insurance fraud offenses charged in the other counts, the result in *Diaz-Munoz* would have been different.[7]

The prosecution of both types of offenses in a single trial was also appropriate in this case because they arose out of a single transaction.

## MOTION FOR SEVERANCE

■ Even if the joinder of two or more offenses is permissible under Rule 8(a), the court may be required to sever the offenses because of the possibility of undue prejudice from a single trial. *Kopituk,* 690 F.2d at 1314; *Barrett,* 505 F.2d at 1106; *Isaacs,* 493 F.2d at 1159; *Blunt v. United States,* 404 F.2d 1283, 1288 (D.C.Cir.1968), *cert. denied,* 394 U.S. 909, 89 S.Ct. 1021, 22 L.Ed.2d

221 (1969). *See generally* Moore's Federal Practice, *supra,* ¶ 14.02; Wright, Federal Practice and Procedure, *supra,* § 221; Note *supra,* at 553–54. Fed.R.Crim.P. 14 is applicable in such instances. It provides in relevant part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

The defendant made a motion for severance of Count I from Counts II, III, and IV in this case. On January 29, 1982, the district court denied the motion. It held: (1) that joinder was proper under Rule 8(a) since the offenses arose from the same act or transaction; (2) the defendant's statement that he wished "to testify pertaining to some counts but not other counts is entirely too speculative and problematical to establish the required prejudice"; and (3) the fact that the defendant was ready to proceed to trial on the conspiracy charge, but not the tax evasion charges was not the kind of prejudice justifying relief under Rule 14.

■ We conclude that the defendant was entitled to relief under Rule 14. A motion for severance pursuant to Rule 14 is committed to the sound discretion of the trial court. *Kopituk,* 690 F.2d at 1315; *Anderson,* 642 F.2d at 285; *United States v. Foutz,* 540 F.2d 733, 737 (4th Cir.1976); *Barrett,* 505 F.2d at 1106. However, as the cases construing Rule 14 make clear, such discretion must be exercised in light of all the relevant circumstances. Foremost among the relevant circumstances is a "balancing of the interest of the public in avoid-

---

7. Although joinder of separate offenses involving several defendants is governed by Fed.R. Crim.P. 8(b), the critical distinction between Rule 8(a) and 8(b) is the inclusion of the term "of the same or similar character" in the former. As the court in *United States v. Kopituk,* 690 F.2d 1289, 1313 n. 21 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983), correctly observed:

> Of course, adherence to a subsection (b) rather than a subsection (a) analysis in *Diaz-Munoz* would in no way have affected the result in that case, since the critical term distinguishing the two subsections ("of the same or similar character") was not at issue therein.

ing a multiplicity of litigation and the interest of the defendant in obtaining a fair trial." Moore's Federal Practice, *supra*, ¶ 14.02.

■ The record reveals that the attorney who eventually represented the defendant at trial was the third attorney to represent the defendant in this matter. It appears that no preparation was done for the trial by the other attorneys. When the second attorney agreed to undertake the matter, he was allegedly under the impression that he would be attempting to complete a plea arrangement undertaken by his predecessor. When he found that no plea arrangement could be reached, he filed a motion to withdraw. The motion was denied. But the third attorney was allowed to "step into the shoes" of prior counsel with the understanding that the substitution "would not add to nor detract from the claims of lack of preparation."

The second attorney for the defendant also filed a motion to adjourn the trial date. He informed the court that he was prepared to represent the defendant on the conspiracy count, but was not ready to go to trial on the tax evasion charges. The court denied this motion, noting that the trial had already been postponed once. The court was concerned that failure to grant a further postponement would encourage the substitution of counsel and even greater delays. The court granted one additional week for preparation.

The proof on the conspiracy count was simple and straightforward. However, the government sought to prove the tax evasion charges under a net worth theory. Basically, this involved the reconstruction of the defendant's actual income for the relevant years, by adding his cash on hand at the end of the last year for which a legitimate tax return was filed, cash in the bank, business inventory, value of vehicles owned, prepaid interest, and deferred charges of 1975. From this sum, liabilities and accumulated depreciation were subtracted to derive his net worth for the following year. Taxes were assessed on this basis. The same procedure was used for the following two years in which income tax evasion was alleged.

Proof of income tax evasion under the net worth theory is a fairly complicated matter. In the instant case, the government introduced 362 exhibits into evidence on the tax evasion charges and also had a summary witness testify on the calculations relied upon by the government. The defendant did not have time to retain a summary witness who could sift through the government's evidence for possible error.

Under these circumstances, the court should have granted the motion for severance of the charges. When it was made clear to the district court that trial counsel was not ready to proceed on the tax evasion charges, the court had an obligation to consider the possible prejudice from the evidence on the conspiracy count being presented in a trial on the tax evasion counts. The court should have considered the complexity of the charges and the possible "spillover" effect from trying the different types of offenses in a joint trial. If the court was concerned with the possibility of violations of the Speedy Trial Act, the court could have easily proceeded to trial on the conspiracy charge immediately while deferring trial on the tax evasion counts until counsel was given a reasonable amount of time for preparation.

Alternatively, the court could have granted the motion for a continuance and provided defense counsel with time to prepare a defense on the tax evasion charges. "Although rulings on motions for continuance are traditionally best left to the trial court's discretion, a judge is not imbued with the power to abrogate a criminal defendant's constitutional rights." *United States v. King,* 664 F.2d 1171, 1173 (10th Cir.1981). *See also Linton v. Perini,* 656 F.2d 207, 211 (6th Cir.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982). In addressing this matter, the Supreme Court has stated:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due

process even if the party fails to offer evidence .... Contrariwise, a myopic insistence upon expeditiousness in the fact of a justifiable request for delay can render the right to defend with counsel an empty formality .... There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

*Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849–850, 11 L.Ed.2d 921 (1964).

■ Similarly, there are no mechanical tests for determining the amount of time required for adequate preparation for trial in a criminal case. *Linton v. Perini,* 656 F.2d at 209; *United States v. Faulkner,* 538 F.2d 724, 729 (6th Cir.1976), *cert. denied,* 429 U.S. 1023, 97 S.Ct. 640, 50 L.Ed.2d 624 (1976). Therefore, "we look for a showing from the defendant of prejudice, *i.e.,* a showing that the continuance would have made relevant witnesses available, or would have added something to the defense." *Faulkner,* 538 F.2d at 729–30. Here, we are left with the firm conviction that a continuance would not have been burdensome on the government or the trial court while it would have provided the defendant with an opportunity to prepare an adequate defense against the government's entire case against him.

The prejudice suffered by the defendant because of the trial court's denial of a continuance became the type of prejudice Rule 14 was designed to alleviate. The defendant's attorney was unprepared to defend on the tax evasion counts because of their complexity. However, the joinder of the tax evasion counts with the drug count compounded the consequences of the defense's lack of preparation. The defense attorney was unprepared to combat the "spillover" effect of trying the drug and tax offenses together. It is clear, then, that the joinder of these offenses prejudiced the defendant's right to a fair trial. Had the trial court severed the offenses and granted the defendant a continuance on the tax evasion counts, the prejudice would have been eliminated.

■ A trial court has the authority to tightly control its docket. *Linton,* 656 F.2d at 209. However, the court also has an obligation under Rule 14 to insure against undue prejudice from the trial of two or more offenses in a single proceeding. 8 Moore's Federal Practice, *supra,* ¶ 14.02; Wright, Federal Practice and Procedure, *supra,* § 221. Since we find substantial prejudice in this case from the joint trial of the two different kinds of offenses, we conclude that the defendant was denied his Sixth Amendment right to a fair trial. Accordingly, the judgment is reversed and the case remanded for a new trial.

PORTER, Senior District Judge, dissenting.

I respectfully dissent. I would not reverse on the ground that it was error to partially deny defendant's third motion for continuance, the subsequent motion for severance or on any of the other grounds asserted for reversal.

## Denial of Motion for Severance and Motion for Continuance

First, defendant " 'contributed to the circumstance which [gave] rise to the request for a continuance ...' " *Linton v. Perini,* 656 F.2d 207, 210 (6th Cir.1981), *cert. denied,* 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982), *quoting United States v. Burton,* 584 F.2d 485, 490 (CA D.C.1978), *cert. denied,* 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979). *See also United States v. Uptain,* 531 F.2d 1281, 1286 n. 5 (5th Cir.1976).

Second, there was nothing inherently prejudicial in the granting of a limited (one week that turned into two) continuance. *United States v. Knight,* 443 F.2d 174, 178 (6th Cir.1971). And there was no *showing* of actual prejudice. *Id.* 177.

To elaborate we first note a statement by the Court in *United States v. Sahley,* 526 F.2d 913, 917 (5th Cir.1976): "[u]nderstanding of this issue [request for a continuance] requires us to set the circumstances in per-

spective." Also it is well to keep in mind what the Supreme Court said in *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 850, 11 L.Ed.2d 921 (1964)—"[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the Trial Judge at the time the request is denied."

The circumstances leading up to the limited denial of the third request for continuance are reflected in the docket sheets (Joint Appendix, 1–9). These show the indictment in this case was filed August 28, 1981. Defendant first appeared with counsel on September 1, 1981 (Joint Appendix, p. 3). It is not clear who that counsel was, but the next entry on the docket shows that Attorney Neil H. Fink was added to the case that same day. Of course the defendant entered a plea of not guilty when arraigned September 9, 1981 (*Id.,* p. 3). On October 5, 1981, a trial date was set for October 19, 1981. As noted in the government's brief, (p. 42) due to Judge Harvey's illness, the case was transferred to Judge Guy November 17, 1981. Earlier on October 15, 1981, a motion to reset the trial date had been granted (*Id.,* p. 4) and the trial was reset from October 19 to "without date." Judge Guy made various findings of excludable delay for purposes of the Speedy Trial Act. He then granted defendant's motion for more time to file additional motions and allowed Frederick E. Salim to be substituted as defendant's counsel November 18, 1981. Mr. Salim then moved for adjournment of the trial until after January 4, 1982. That motion was dated November 19, 1981. Judge Guy granted the motion and adjourned the trial date until January 11, 1982, but actually the trial did not start until February 2, 1982. On December 18, 1981, a petition was filed by Salim to withdraw from the case because the plea agreement he anticipated when he agreed to represent defendant did not materialize and his schedule would not accommodate a trial. This was denied December 22, 1981 and then on January 8, 1982 there

was still another motion to reset the trial date (Joint Appendix, p. 4). This was supported by a memo in which counsel said he needed more time and had conflicts. There is no mention of a need for an expert witness and of course none was named.

Judge Guy denied the motion in an Order that was filed January 14, 1982 (Joint Appendix, pp. 27–28). In this, he noted that the indictment was returned August 28, 1981 and then said:

> The only reason this matter was not set for trial prior to the January 11, 1982 date was a series of fortuitous events which have already given this defendant far more time than is normal in terms of the time between indictment and trial. This case was originally assigned to Judge Newblatt in Flint and was reassigned to Judge Harvey in Bay City. This reassignment resulted in a delay. Judge Harvey then became ill and, in order to aid Judge Harvey in connection with speedy trial problems that he might have with his criminal docket, this case was reassigned to this court. Immediately upon reassignment to this court, this court met with counsel for the defendant and an agreed trial date of January 11, 1982 was set. At no time was there any representation made to the court that this date was agreed to on the basis of the fact that there was going to be a plea...."

(*Id.* p. 27).

On January 12, 1982, there was a consent order for substitution of counsel. Mr. DuMouchel was substituted in place of Salim. After that, there were motions for severance, separate trials, to dismiss Count I, motions in limine, all of which were denied or otherwise acted upon and the trial finally began February 2, 1982, as noted above (Joint Appendix, p. 6).

It is significant that in the motion to adjourn the trial date filed by defendant's second attorney (Joint Appendix, p. 21), he stated as follows: "That every effort was made by Attorney Salim to contact the respondent, Craig Wirsing, and although he

did talk to respondent Wirsing, by telephone, it was not until December 16, 1981 that respondent came in to this petitioner's office for an in-depth discussion regarding the Rule 11 plea offer ...." After noting the trial was set for January 11, 1982 (Joint Appendix, p. 22), Salim stated: "That the fact that the Respondent has been in a state other than Michigan during nearly the whole time from November 1981 to the present date has made it impossible to communicate with him and to obtain his assistance in any degree in preparation for trial or planning the defense of this cause ..." (Joint Appendix, p. 23).

Finally, we note that in the "Consent and Order of Substitution of Counsel" dated January 12, 1982, DuMouchel stated that while he was not prepared adequately to proceed, "he will be no less prepared than prior counsel and will diligently prepare for trial insofar as possible given the time available" and "no additional continuance is being sought solely as a result of this substitution, although none of the prior requests for continuance is intended to be waived thereby." (Joint Appendix, p. 31).

Thus, DuMouchel entered the case three weeks before trial and made no request for continuance. He did not see fit to reply the following statement in the government's brief on this assignment of error, a statement which we find persuasive and with which we therefore agree:

A review of the facts and circumstances in this case demonstrates that Judge Guy's refusal to grant a further 60-day continuance did not deprive defendant of the effective assistance of counsel. The disputed issues at trial were relatively simple. Defense counsel argued that defendant withdrew from the conspiracy alleged in the indictment and that, because defendant possessed a cash hoard at the end of 1975, the government failed to establish an accurate opening net worth. While the government did introduce a large number of documents, those documents were provided by the government well in advance of trial. Moreover, according to Judge Guy, who became familiar with the contents of those documents during trial:

Defense counsel had adequate opportunity to review the documents ultimately offered at trial by the Government as evidenced by counsel's decision either to stipulate to their admission at the beginning of the case or by raising objections to them through motions in limine on which he succeeded in keeping certain documents out of evidence.

(Opinion denying defendant's motion for acquittal or new trial dated March 30, 1982 at 5, quoted in government's brief at 45).

We note that all counsel for defendant argues is that he may have been in a position to do a better job if he had an expert witness and more time for preparation. In this connection, the Court in *United States v. Uptain,* 531 F.2d 1281, 1287 (5th Cir.1976) said:

Within this general category of cases, a particularly common claim is that a continuance was necessary to interview and subpoena potential witnesses. The panels of this court that have ruled on such claims have considered the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony. A general rule recently has emerged:

A movant must show that due diligence has been exercised to obtain the attendance of the witness, that substantial favorable testimony would be tendered by the witness, that the witness is available and willing to testify, and that the denial of a continuance would materially prejudice the defendant. *United States v. Miller,* 513 F.2d 791, 793 (5th Cir.1975). *See also United States v. Cawley,* 481 F.2d 702, 705 (5th Cir.1973).

[footnotes omitted].

Something else the Court said in *Uptain* deserves to be noted. After pointing out

the grounds asserted for a continuance (including the claim that there was insufficient time for preparation) the Court said:

> None of these justifications for a continuance is new to this court. To the contrary, the cases are so numerous and involve such varying factual contexts and bases for decision that merely cataloging them is a task of significant proportion. We have deemed the following factors highly relevant in assessing claims of inadequate preparation time: the quantum of time available for preparation, the likelihood of prejudice from denial, the accused's role in shortening the effective preparation time,[5] the degree of complexity of the case, and the availability of discovery from the prosecution. We have also explicitly considered the adequacy of the defense actually provided at trial, the skill and experience of the attorney, any pre-appointment or pre-retention experience of the attorney with the accused or the alleged crime, and any representation of the defendant by other attorneys that accrues to his benefit. *Id.,* 1286 [footnotes omitted, except n. 5].

[5] *United States v. Sahley,* 526 F.2d 913 (5th Cir.1976); *Thomas v. Estelle,* 486 F.2d 224 (5th Cir.1973); *Kroll v. United States,* 433 F.2d 1282 (5th Cir.1970), *cert. denied sub nom. Adler v. United States,* 402 U.S. 944, 91 S.Ct. 1616, 29 L.Ed.2d 112 (1971); *United States v. Valdez,* 418 F.2d 363 (5th Cir.1969); *Glenn v. United States,* 303 F.2d 536 (5th Cir.1962), *cert. denied sub nom. Everitt v. United States,* 372 U.S. 920, 83 S.Ct. 734, 9 L.Ed.2d 725 (1963).

The cases cited by the *Uptain* court at note 5, *supra,* bear out that the accused's role in shortening the effective preparation time is a factor in assessing claims of inadequate preparation time in connection with a motion for a continuance. In other words, if the accused's predicament is due to his own failure to cooperate with counsel then he should not be allowed to continue a firm trial date set far in advance on the ground that he needs more time to prepare.

1. The panel found that the trial court did not err by refusing to allow Skinner to testify that appellant told him that he (Wirsing) was leaving the conspiracy. See n. 5, *ante.* I agree with the majority insofar as it found that the

Taking into account all the pertinent factors, I would affirm the Court's partial denial of the defendant's third request for a continuance. In particular, I conclude the defendant did not use due diligence in trying to get an expert witness and there was no showing made at the time of the third motion for a continuance that a witness was available, willing to testify and that such testimony would have been favorable.

My conclusion that the trial judge did not abuse his discretion by denying, in part, defendant's request for a continuance applies with equal force to the denial of defendant's motion to sever the conspiracy count from the tax evasion counts. The thrust of the majority opinion is that the same circumstance (*i.e.,* insufficient preparation time) that demanded a continuance required alternatively that the trial judge grant severance and defer trial on the tax evasion counts.

The majority speaks of the possible "spillover" effect from trying the different types of offenses together. A "spillover" is inevitable, to some extent, any time offenses are joined for trial. *See United States v. Barrett,* 505 F.2d 1091, 1106 (7th Cir.1974), *cert. denied,* 421 U.S. 964, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975). The majority's assertion that lack of adequate preparation time rendered the defense attorney "unprepared to combat the 'spillover' effect" is highly speculative in this case. I do not believe that the trial court abused its discretion in denying defendant's motion for severance under the circumstances.

Appellant raises four additional issues on appeal which have not been addressed because of the panel's disposition of this case on the joinder issue.[1] I now turn to a discussion of the remaining grounds asserted for reversal.

The Conspiracy Count

Appellant argues that the evidence shows he withdrew from the single conspiracy

defendant got this evidence before the jury. The testimony in question was elicited prior to the government's objection to "anymore of these statements" (Joint Appendix, p. 131). The error, if any, was harmless.

charged in Count I of the indictment[2] and formed a separate, competing conspiracy in 1975 or early 1976, prior to the commencement of the statute of limitations period.[3] He acknowledges that he was involved with one member of the original conspiracy (Douglas Skinner) after August 26, 1976, but contends that the government's evidence shows that he left the Griffith-Reynolds group prior to that date. He argues that the result is a fatal variance between the offense charged in the indictment and the proof at trial, and the district court erred by failing to direct a verdict of acquittal on the conspiracy count.

"If an indictment alleges one conspiracy, but the evidence can reasonably be construed only as supporting a finding of multiple conspiracies, the resulting variance between the indictment and the proof is reversible error if the appellant can show that he was prejudiced thereby." *United States v. Warner,* 690 F.2d 545, 548 (6th Cir.1982). The *Warner* Court found, however, that a single conspiracy does not become multiple conspiracies simply because each participant did not know every other member, or because each did not become involved in all of the activities in furtherance of the conspiracy. *Id.* at 549, *citing Blumenthal v. United States,* 332 U.S. 539, 556–57, 68 S.Ct. 248, 256–257, 92 L.Ed. 154 (1947); *United States v. Mayes,* 512 F.2d 637, 642 (6th Cir.1975), *cert. denied,* 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975) and *sub nom. Cook v. United States,* 423 U.S. 840, 96 S.Ct. 69, 46 L.Ed.2d 59 (1975).

The evidence at trial was consistent with a finding that a single conspiracy existed which continued into the statute of limitations period. Terry Jelinek testified that he met Wirsing and Griffith at Wirsing's cabin

at Holly, Michigan in early 1976. He was supplied with marijuana by both individuals during 1976, and by Griffith until 1978. Gregory Konrad, a driver for Reynolds, picked up marijuana in Florida and delivered it to Wirsing's cabin in 1977, although he stated that he did not know the defendant. The evidence shows that Wirsing and Reynolds were transporting marijuana from Florida to supply the Flint, Michigan area.

Viewing the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 62, 62 S.Ct. 457, 461, 86 L.Ed. 680 (1942), the proof at trial was consistent with a finding that a single, continuing conspiracy existed as charged in the indictment and that appellant was a member of that conspiracy. I conclude under the *Warner* analysis, *supra,* that there is no variance in this case.

Appellant next argues that the trial court's refusal to give a requested jury instruction on multiple conspiracies and to permit argument on his multiple conspiracy theory deprived him of a fair trial. As he points out, the trial court focused on the length of his involvement, and reasoned that "the jury would ... have been able to conclude that defendant remained part of the over-all conspiracy charged in the indictment ... but that different members of the conspiracy participated at different times." (Opinion Denying Motion for Judgment of Acquittal or New Trial, p. 7).

In refusing to give a multiple conspiracy charge, the trial court relied principally on the Second Circuit's holdings in *United States v. Sir Kue Chin,* 534 F.2d 1032 (1976) and *United States v. Corey,* 566 F.2d 429 (1977). The *Sir Kue Chin* and *Corey* decisions appear to preclude a multiple conspir-

---

**2.** Count I of the indictment charges:

[t]hat from on or about January 1, 1972, and continuing thereafter up to and including the date of the filing of this Indictment, in the Eastern District of Michigan and elsewhere, CRAIG C. WIRSING, defendant herein, did knowingly, intentionally and unlawfully combine, conspire, confederate and agree together with Roy Griffith, Frank Reynolds, Jackie D. Miller, Jr., Douglas Skinner, and others whose names are both known and unknown to the grand jury

to ... possess with intent to distribute and to distribute quantities of marijuana, a Schedule I Controlled Substance, in violation of Sections 841(a)(1) and 846 of Title 21, United States Code.

**3.** The statute of limitations period commenced on August 28, 1976, or five years prior to the date of the filing of the indictment. 18 U.S.C. § 3282.

acy analysis where a single defendant is on trial, because the defendant "could not have been prejudiced ... by spillover or otherwise. *United States v. Corey, supra* at 431, n. 3, *citing Sir Kue Chin, supra.*

Of course, appellant is not concerned with the "spillover" or "guilt by association" problem which may surface where more than one defendant is on trial. *See United States v. Kenny,* 645 F.2d 1323, 1336–37 (9th Cir.1981), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981). The theory advanced at trial was that Wirsing withdrew from the conspiracy charged and formed a new, competing conspiracy prior to the onset of the limitations period.

"In a criminal case, it is reversible error for a trial judge to refuse to present adequately a defendant's theory of defense, especially where a proper request therefor is proffered." *United States v. Blane,* 375 F.2d 249, 252 (6th Cir.1967), *cert. denied,* 389 U.S. 835, 88 S.Ct. 41, 19 L.Ed.2d 96 (1967). The exact language of a requested charge need not be given, so long as the charge as a whole adequately covers the theory of the defense. *Id.* There must be some evidentiary foundation to support defendant's theory. *United States v. Grimes,* 413 F.2d 1376, 1378 (7th Cir.1969); *United States v. Young,* 464 F.2d 160, 164 (5th Cir.1972).

At the outset, I fail to see an evidentiary basis for appellant's multiple conspiracy theory on the facts of the case. There was ample evidence that defendant was involved in the marijuana business with the co-conspirators as alleged in the indictment well into the statute of limitations period. Moreover, the casual nature of a conspiracy, shifting membership, and a nonhierarchical structure do not, without more, evidence the existence of more than one general business venture. *See United States v. McGrath,* 613 F.2d 361, 367 (2d Cir.1979), *cert. denied,* 446 U.S. 967, 100 S.Ct. 2946, 64 L.Ed.2d 827 (1980).

The critical inquiry is whether the trial court's instructions, viewed in their entirety, were adequate. *See United States v. Kenny, supra.* In the case *sub judice,* the trial court explained the meaning and import of the applicable statute of limitations, and instructed that in order to sustain a finding of guilt, "you must find that the defendant was participating as a conspirator in the conspiracy charged in the indictment as of August 28, 1976" (Joint Appendix, pp. 688–689). The Court also instructed on the withdrawal defense. The instructions, on the whole, were sufficient to inform the jury that the defendant could only be convicted of the offense with which he was charged, and no other.

The Tax Evasion Counts

Appellant's remaining arguments are directed against his conviction on Counts II, III and IV of the indictment, which charged him with income tax evasion (26 U.S.C. § 7201) for the years 1976, 1977 and 1978, respectively. The government sought to prove by the net worth method that Wirsing substantially understated his taxable income on the returns which he filed for those years.

The net worth analysis is an indirect method of proving income which relies chiefly on circumstantial evidence. The government's expert witness (IRS Agent Bednarczyk) recomputed defendant's taxable income by determining his net worth (excess of assets at cost over liabilities) at the end of each year plus his nondeductible expenditures during the year. The difference between this figure and the net worth at the beginning of the year is treated as taxable income received during the year, *see United States v. Giacalone,* 574 F.2d 328, 330 (6th Cir.1978), *cert. denied,* 439 U.S. 834, 99 S.Ct. 114, 58 L.Ed.2d 129 (1978), and is compared against the income reported by the taxpayer on his return.

When the government employs the net worth analysis, it is essential that it establish opening net worth (in this case, appellant's net worth at the end of 1975) with reasonable certainty, because this serves as a starting point to calculate future increases in the taxpayer's assets. *Holland v. United States,* 348 U.S. 121, 132, 75 S.Ct. 127, 133–134, 99 L.Ed. 150 (1954). The *Holland* Court cautioned that use of the net

worth method requires "great care and restraint," and instructed appellate courts to bear in mind the difficulties inherent "when circumstantial evidence ... is the chief weapon of a method that is itself only an approximation." *Id.* at 129, 75 S.Ct. at 132.

Appellant claims that the evidence pointed to the existence of a "cash hoard" which dramatically increased his net worth as of December 31, 1975. One immunized co-conspirator testified that there were "stash holes" on Wirsing's Holland, Michigan property in which substantial amounts of cash were buried during 1972, 1973 and possibly 1974. Another witness testified that he retrieved $15,000 from a "stash hole" on the property in 1975 or 1976, but the money belonged to Griffith, and not to appellant. Wirsing's sister, Marcia Kolch, testified that she saw a laundry basket in Wirsing's bedroom with "stacks of twenties" and "stacks of hundreds" in the summer of 1976. She also said there was "always money around from the early years on. It would be, you know, anywhere Craig was" (Joint Appendix, p. 535).

The government's expert credited Wirsing with $20,000 as the cash component of his opening net worth, based primarily on certain cash purchases made by Wirsing in the early part of 1976 and deposits in a Nevada bank account. He also recited a number of factors which he considered in discounting defendant's "cash hoard" argument.[4]

I cannot agree with appellant that "The jury [was] ... called upon to choose between 'reasonable probabilities' of equal weight, one innocent and the other criminal...." *United States v. Campion,* 560 F.2d 751, 753 (6th Cir.1977). The testimony relied on by appellant does not establish the existence of a cash hoard just prior to January 1, 1976 substantially in excess of the cash on hand figure derived by the govern-

ment's expert witness. The trial court properly denied defendant's motion for acquittal on the tax counts.

Appellant's final argument is that the trial court erred by refusing to instruct on lesser-included offenses encompassed by § 7201. Specifically, the Court refused to give requested instructions on willful failure to supply information in violation of 26 U.S.C. § 7203 and willful filing of a false tax return in violation of 26 U.S.C. § 7207. Appellant asks the Court to vacate his sentence imposed for tax evasion and resentence him under the lesser-included offenses. *See United States v. Lamartina,* 584 F.2d 764 (6th Cir.1978), *cert. denied,* 440 U.S. 928, 99 S.Ct. 1263, 59 L.Ed.2d 483 (1979).

The elements which the prosecution must prove in a tax evasion case are: (1) willfulness; (2) the existence of a tax deficiency; and (3) an affirmative act constituting an evasion or attempted evasion of the tax. *Sansone v. United States,* 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965). The *Sansone* Court held that § 7203 or § 7207 may be lesser-included offenses to § 7201 "in an appropriate case." *Id.* at 349, 85 S.Ct. at 1009. The lesser-offense charge, however,

> is not proper where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and greater offenses. [Citations omitted.] In other words, the lesser offense must be included within but not, on the facts of the case, be completely encompassed by the greater. A lesser-included offense instruction is only proper when the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense.

*Id.* at 349–350, 85 S.Ct. at 1009 [citations omitted.] As the Court observed in *Keeble*

---

4. Agent Bednarczyk's testimony in this regard included: (1) statements made by defendant in 1976 to an architect who designed a home for defendant that he lacked funds to continue construction; (2) lack of another source of cash (*i.e.,* from mother or father's estate) other than the "business"; (3) purchases made on credit, late loan payments, trade-in of a vehicle to finance another purchase, all of which indicated lack of ready cash; (4) defendant's age, and (5) testimony of defendant's sister (Kolch) that the availability of marijuana was limited in 1975.

*v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973), there must be evidence which "would permit a jury rationally to find [defendant] guilty of the lesser offense and acquit him of the greater."

Appellant contends that the jury could have found that he failed to disclose some income from marijuana sales during the prosecution years in violation of § 7203 or § 7207. He argues that he could have been convicted of these lesser offenses without the jury resolving an additional disputed issue of fact required to convict under § 7201—the existence of a substantial tax deficiency.

Appellant's argument is without merit. It is premised on the jury's acceptance that a cash hoard existed at the end of 1975. This would have explained the source of funds used by Wirsing to purchase assets and pay expenses during the years 1976–1978. Because it would have been in existence prior to that period, the cash hoard would not give rise to a tax deficiency in the prosecution years.

However, if the cash hoard was the source of funds for purchases made and expenses paid during the years 1976–1978, then a rational jury could not have found the defendant guilty of violating § 7203 or § 7207 in this case. On the facts, the only other reasonable explanation for Wirsing's purchases and expenditures is income earned (and not reported) during the prosecution years. This income would give rise to a tax deficiency. Under the Court's holdings in *Sansone* and *Keeble, supra,* the trial court did not err by refusing to give the requested instructions.

For the foregoing reasons, I would affirm appellant Wirsing's conviction on all four counts of the indictment.