972 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Fredrick CONTI, Defendant-Appellant.
 No. 91-3712.
 United States Court of Appeals, Sixth Circuit.
 July 24, 1992.
 
 Before KEITH and RYAN, Circuit Judges, and WEBER, District Judge*.
 PER CURIAM:
 
 
 1
 Defendant Fredrick Conti ("Conti") appeals from the April 2, 1991, jury verdict and July 31, 1991, sentence for his convictions for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846; two counts of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); and interstate travel in aid of racketeering in violation of 18 U.S.C. § 1952. The district court sentenced Conti to two hundred ninety-two (292) months imprisonment, followed by five years of supervised release and a special assessment of $200. For the reasons set forth below, we AFFIRM.
 
 I.
 
 2
 Conti's alleged involvement in a cocaine distribution network was part of an investigation into drug trafficking between New York and Ohio. Alleged principals in the network were Salvatore Gati, Anthony Gati, and Conti. The Federal Bureau of Investigation ("FBI") kept both Salvatore and Anthony Gati under surveillance after an investigation indicated that they would receive large quantities of cocaine from Colombian drug traffickers out of New York City for resale in Northeastern Ohio. Conti's alleged role in the scheme was defined after Anthony Gati and Vicki Tracy began cooperating with federal authorities.[2]
 
 
 3
 Anthony Gati testified that, in the middle of October 1989, he and Salvatore Gati arranged for a shipment of cocaine from Colombian drug traffickers. At that time, William Gaviria brought five kilograms of cocaine from New York.[3] Salvatore Gati received three kilograms and Conti received two kilograms. Anthony Gati testified that he was present when Conti paid for and picked up one of these kilograms.
 
 
 4
 Anthony Gati further claimed that he drove to New York in early June 1990 where he was "fronted" a kilogram of cocaine by William Gaviria and Bertha Cortes. Upon his return to Mentor, Ohio, he alleged that he turned the cocaine over to Salvatore Gati, who in turn sold seventeen ounces of that kilogram to Conti.
 
 
 5
 Vicki Tracy also cooperated extensively with the federal authorities in an arrangement that ultimately led to the apprehension of Conti. She testified at trial that Conti asked her to contact the Colombians so that he could deal directly with them in securing his cocaine purchases. Utilizing this information, the FBI devised the plan which eventually led to Conti's arrest. Pursuant to the plan, Tracy advised Conti that he should contact the Colombians at a telephone number which was in fact the telephone number of the FBI in New York City. A New York Police Detective, posing as a Colombian drug dealer, spoke with Conti regarding a proposed drug transaction.
 
 
 6
 On August 9, 1990, Tracy made a consensually monitored telephone call to Conti in which she told him that two Colombians were in town and wanted to make a deal. Conti and Tracy met with FBI agents, posing as drug dealers, at a motel, where Conti agreed to pay $27,000 for each of two kilograms of cocaine. They also agreed that Conti was to be fronted a third kilogram, for which he would pay later. Tracy testified that she and Conti then left and proceeded to several locations were Conti collected money to pay for the cocaine.
 
 
 7
 Later that afternoon, Conti returned with Tracy to the motel room with a paper bag containing $54,000 in cash. A hidden camera in the motel room recorded the delivery of the cash. On the videotape, which was played at trial, Conti agreed to accept a third kilogram which he would pay for at a later date. One of the undercover agents then walked Conti outside to a vehicle containing the three kilograms of cocaine. As Conti attempted to leave, he was arrested by agents that had monitored the entire transaction.
 
 
 8
 On August 21, 1990, Conti was indicted on one count which charged possession with intent to distribute approximately three kilograms of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B). A Superseding Indictment on October 4, 1990, charged Conti with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846; two counts of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); and interstate travel in aid of racketeering in violation of 18 U.S.C. §§ 2, 1952.
 
 
 9
 In the jury trial that followed, the government's principal witnesses were Anthony Gati and Vicki Tracy. Other evidence adduced at trial was the videotape. Conti disputed the authenticity of the tape and the conclusions drawn by each of the experts. Experts selected by both parties reviewed the tape and agreed that it had not been altered.
 
 
 10
 Conti brings two assignments of error on appeal. He first contends that the trial court erred when it refused to give the entrapment instruction to the jury. He further contends that court erred in refusing to hold a hearing to consider a request that Conti made for substitute counsel. Because each assignment of error lacks merit, we AFFIRM.
 
 II.
 A.
 
 11
 "As a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63 (1988). The Supreme Court has stated "that a valid entrapment defense has two related elements: government inducement of a crime and a lack of predisposition on the part of the defendant to engage in the criminal conduct." Id. This Circuit has further elaborated on the elements stating that "a predisposed defendant is one who is ready and willing to commit an offense apart from government encouragement, and not an innocent person in whose mind the government implanted a disposition to commit an offense." United States v. Nelson, 922 F.2d 311, 317 (1990), cert. denied 111 S.Ct. 1635 (1991) (citing United States v. Lazcano, 881 F.2d 402, 406 (7th Cir.1989)).
 
 
 12
 Following the government's case, the defense made a Rule 29 motion for acquittal. After the court denied this motion, the defense rested. At this point, the district court openly pondered the merits of giving an entrapment instruction to the jury. Initially, the trial judge stated:
 
 
 13
 Well, so far as defense of entrapment is concerned, there is not enough evidence for the court to find as a matter of law that there is entrapment as to Mr. Conti. However, counsel may wish to charge the jury on that matter, and the court sees no problem with that.
 
 
 14
 After the government registered its objection on the following day, the parties argued the propriety of giving the instruction. The court then stated in pertinent part:
 
 
 15
 All right. I went home last night after we had left, myself, and even after I go [sic] over charges, saying I would give the entrapment defense bothered me greatly and I came back and looked at Mathews, and then the prosecutor comes in and says he objects to it because of certain reasons and I am convinced that he is probably right in this instance; the entrapment defense shouldn't be given because there is not sufficient evidence in my opinion from which a reasonable jury could find that the government entrapped the defendant in this case. Therefore, we won't give it.
 
 
 16
 The evidence presented at trial firmly supports the trial court's denial of defendant's motion for the entrapment instruction. Notwithstanding Conti's characterization of the credibility of the government's witnesses, the testimony of Anthony Gati regarding Conti's involvement with cocaine distribution in Northeastern Ohio shows that Conti was indeed predisposed to distribute cocaine without any government inducement. Anthony Gati testified to the previous five kilogram deal of October 1989 and his purchase of seventeen ounces two months prior to the controlled drug sale made by FBI agents.
 
 
 17
 Moreover, the testimony of Tracy indicated that Conti was attempting to forego the middle man, Salvatore Gati, and purchase the cocaine directly from Colombian distributors. The FBI merely presented the opportunity for Conti to implement a prior design. The facts show that Conti is better characterized as the "unwary criminal" rather than the "unwary innocent." See Sherman v. United States, 356 U.S. 369, 372 (1958). Accordingly, the district court did not err by refusing to instruct the jury with regard to the entrapment defense.
 
 B.
 
 18
 Conti also contends that the district court erred by failing to conduct a hearing to consider defendant's request for substitute counsel. The consideration of such motions is within the discretion of the court and may only be reversed for an abuse of discretion. United States v. Wirsing, 719 F.2d 859, 865 (6th Cir.1983).
 
 
 19
 This Circuit has stated that "it is clear that when an accused is financially able to retain an attorney, the choice of counsel to assist him rests ultimately in his hands and not in the hands of the State." Wilson v. Mintzes, 761 F.2d 275, 280 (6th Cir.1985). The Wilson court further elaborated:
 
 
 20
 While an accused's right to choose counsel to assist him at trial is an essential component of the sixth amendment right to assistance of counsel, it is beyond peradventure that such right is not absolute.... When an accused seeks substitution of counsel in mid-trial, he must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution (citations omitted).
 
 
 21
 Id. at 280. "Consideration of such motions requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." Id.
 
 
 22
 Conti retained his trial counsel seven months before the commencement of the trial. The circumstances which gave rise to this assignment of error took place on the first day of trial, after jury selection but prior to opening statements. Conti asked the court if he could approach the bench and informed the court of his suspicions regarding the accuracy of the tapes and videotape that would be used as evidence by the government. Conti expressed some concern with the expert that his attorney chose to analyze the tapes, and requested a continuance until he could have an expert of his choice review the tapes. Following a long colloquy regarding the analysis of the tapes and when such data would be available, the court resolved to proceed with the trial and recessed until the following day.
 
 
 23
 Upon reconvening the following morning, Conti requested substitute counsel. The court informed him that he may do so at anytime, but further inquiry by the court indicated that Conti had not yet phoned an alternate because he had just decided to replace his counsel on the preceding day. The court informed him that he would give Conti the opportunity to phone his prospective substitute during a break, and the trial testimony proceeded.
 
 
 24
 After the testimony of one law enforcement officer and the making of various stipulations, the government requested a recess. At that time, the district court inquired, "Do you wish to use the phone, Mr. Conti?" Conti replied, "Not now." It must be noted that Conti raised no further requests to substitute counsel throughout the remainder of the trial. As noted above, at the close of the prosecution's case, the defense rested.
 
 
 25
 The district court did not abuse its discretion by failing to hold a hearing to consider Conti's request for substitute counsel. The record indicates that Conti was disgruntled with his attorney's handling of the expert tape analysis, all of which ultimately showed that no tampering had taken place. The record indicates that he voiced no other dissatisfaction with defense counsel's representation, and therefore, no "good cause" was shown. Wilson, 761 F.2d at 280. Moreover, Conti did not have alternate counsel available, and the court properly surmised that a delay would impede the "prompt and efficient administration of justice." Id. Accordingly, the district court did not abuse its discretion in not allowing substitute counsel.
 
 III.
 
 26
 For the foregoing reasons, the jury verdict and sentence imposed by the Honorable George W. White, United States District Judge for the Northern District of Ohio, is AFFIRMED.
 
 
 
 *
 The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [2]
 Anthony Gati agreed to cooperate with the federal authorities following his arrest and the arrest of his father, Salvatore Gati, on or about June 22, 1990. At that time, they were returning from New York with two and one-half kilograms of cocaine in the trunk of their car when they were stopped by the Ohio Highway Patrol. Vicki Tracy was a long-time acquaintance of the Gati's and agreed to cooperate when she was implicated in the drug trafficking scheme
 
 
 [3]
 Approximately six weeks following the arrest of the Gatis in June 1990, they advised the federal authorities that Gaviria, Bertha Cortes, and Saul Teodoro Angarita Valencia were en route to Mentor, Ohio, but had developed car trouble in Pennsylvania. Anthony Gati cooperated with the FBI in setting up a controlled transfer of the cash, which led to the arrest of each of these persons