UNITED STATES of America, Appellee,

v.

SIR KUE CHIN, Appellant.

No. 263, Docket 75–1227.

United States Court of Appeals,
Second Circuit.

Argued Sept. 17, 1975.

Decided April 21, 1976.

Jonathan J. Silbermann, The Legal Aid Society, Federal Defender Services Unit, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for appellant.

Howard S. Sussman, Asst. U.S. Atty., S. D. N. Y., New York City (Paul J. Curran, U.S. Atty., and T. Barry Kingham, Asst. U.S. Atty., S. D. N. Y., New York City, of counsel), for appellee.

Before FRIENDLY, TIMBERS and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

Defendant Sir Kue Chin ("Chin") appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York, after a trial before Honorable William C. Conner, *District Judge,* and a jury. The first count of the indictment charged defendant with conspiring to violate the federal narcotics laws between November 1, 1973 and January 31, 1974, in violation of 21 U.S.C. § 846. The second count charged him with distributing and possessing with intent to distribute 0.04 grams of 38.7% pure heroin on November 4, 1973, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A). Sir Kue Chin was the sole defendant named in the indictment and was tried alone. He was convicted on both counts.

Appellant was sentenced to one year's imprisonment to be followed by three years' special parole on each of the two counts, the sentences to run concurrently. He is presently enlarged on bail pending appeal.

The proof at trial related to appellant's efforts during November and December 1973 to sell heroin in large quantities through Soo Yuen ("Soo") who, unknown to appellant, was an informer for the Drug Enforcement Administration ("DEA"). On November 3, 1973, Soo met appellant in Chinatown, represented himself to be a narcotics dealer from Oregon, and asked appellant to obtain narcotics for him. Appellant suggested a meeting for the following morning. At the meeting of November 4, appellant delivered to Soo a sample of 0.04 grams of 38.7% pure heroin and stated that he could obtain a pound and a half of heroin for $30,000. Appellant stated that his source for this pound and a half was Wong Lim.

Some two weeks later, Soo again met appellant in Chinatown and offered to introduce him to Soo's "old time partner . . . from Oregon" who would like to "get some narcotics and bring it back to Oregon." Appellant agreed. On November 21, 1973, at about two o'clock in the morning, Soo introduced appellant to an undercover agent of the DEA, Stephen Tse ("Tse"), at Shavey Lee's restaurant in Chinatown. In the ensuing conversation appellant offered to sell Tse heroin for $15,000 per pound, in minimum quantities of one-half pound. Tse agreed to buy a half pound " 'for a beginner' " and appellant replied that he would "talk to my man first, talk to this other man first" and "let you know." Tse and appellant arranged to meet again the following night at the same time at Shavey Lee's. No meeting took place on November 22, but appellant told Tse over the telephone that day to get in touch with Soo for further information.

Tse met with appellant twice more before the negotiations between them broke off. On November 26, at Shavey Lee's Tse asked appellant "what the status was" but he "was very evasive at the time." The following day, November 27, Tse met appellant outside of 68 Mott Street and asked him why he had not met him earlier that day at Shavey Lee's as promised. Chin replied that he had been there, and walked past Tse into 68 Mott Street. Shortly thereafter, agent Tse returned to his regular post in Seattle.

Soo again met Chin on December 20, 1973, and told him that he wanted to buy half a pound of heroin. Appellant informed Soo that the heroin which he desired to purchase would cost $8,000, and that it belonged to "Canal Street Wah Foon, a person named Mong Wong." After obtaining the $8,000 from the DEA, Soo met Chin and they both went to the Wah Foon Trading Company where Chin went to the basement and returned with Mong Wong. A few minutes later Mong Wong, Soo, and appellant met in a nearby coffee shop, where they discussed the purchase of narcotics. This meeting was observed by DEA agents, and a partially audible tape recording of the negotiations was made by the use of a recorder worn by Soo. No sale was made, however.

After all the evidence was presented, defendant moved for dismissal of the conspiracy count, contending that the proof, if it showed any conspiracy at all, showed two conspiracies and not the single conspiracy alleged in the indictment because Lim and Mong, the suppliers, "obviously were not connected with each other" so that there was "no showing of a meeting of the minds." Judge Conner accepted this argument and obliged the government to choose which of the two conspiracies it would pursue. Although continuing to maintain that it had charged and proved but one conspiracy, the government chose "the conspiracy involving Wong Lim, that is the first conspiracy." As a result, overt act 5, the only one which alleged a meeting with Mong, was not read to the jury in the court's charge.

On appeal, appellant contends that since the proof at trial established two conspiracies, while the indictment charged only one conspiracy, there was a prejudicial variance between the indictment and the evidence presented at trial, and that this requires reversal and dismissal of the indictment. It is also argued that Judge Conner's decision to delete the fifth overt act from the indict-

ment resulted in an impermissible amendment of the indictment by the court, and that as a result of the deletion it is unclear what crimes the jury's verdict reflects, thus violating the protection of the double jeopardy clause. We believe that these claims are without merit and accordingly affirm the conviction.

■ Initially, we reject appellant's argument that the evidence presented at trial showed two conspiracies rather than one. While Wong Lim and Mong Wong may not have known each other, that is not significant in this case where there was only one defendant who bought from each to get narcotics for a single customer. The essence of the crime is an agreement, and there is no more reason to say that a supplier of narcotics is necessarily engaged in two conspiracies because he has two sources of supply than there would be because he had two purchasers. See *United States v. Tramaglino,* 197 F.2d 928, 930–31 (2 Cir.), *cert. denied,* 344 U.S. 864, 73 S.Ct. 105, 97 L.Ed. 670 (1952). If Wong Lim and Mong Wong were defendants, the case might be different. We have been cited to no case which involves only one defendant and where a claim of multiple conspiracies has been sustained. The evidence supported the conclusion that appellant was consciously acting as part of a single conspiracy of which he, himself, was the hub.[1]

■ Even if appellant were correct in his contention that two conspiracies were shown at trial rather than one, we would still not be constrained to reverse his conviction. As we have noted, "the test for reversible error, if two conspiracies have been established instead of one, is whether the variance affects substantial rights. Fed.R.Crim.P. 52(a). The material inquiry is not the existence but the prejudicial effect of the variance." *United States v. Agueci,* 310 F.2d 817, 827 (2 Cir. 1962); accord, *Berger v. United States,* 295 U.S. 78, 81–84, 55 S.Ct. 629, 630–31, 79 L.Ed. 1314, 1317–19 (1935); *United States v. Miley,* 513 F.2d 1191, 1207–08 (2 Cir.), *cert. denied,* 423 U.S. 842, 96 S.Ct. 74, 46 L.Ed.2d 62 (1975); *United States v. Sperling,* 506 F.2d 1323, 1341 (2 Cir. 1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975); *United States v. Santana,* 503 F.2d 710, 715 (2 Cir.), *cert. denied,* 419 U.S. 1053, 95 S.Ct. 632, 42 L.Ed.2d 649 (1974); *United States v. Calabro,* 467 F.2d 973, 983 (2 Cir. 1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1357, 35 L.Ed.2d 587 (1973); *United States v. Benjamin,* 328 F.2d 854, 864 (2 Cir. 1964). Even if two conspiracies had been proved, both conspiracies could properly have been joined in the same indictment, since there was only one defendant. Fed.R.Crim.P. 8(a) specifically provides that "[t]wo or more offenses may be charged in the same indictment . . . if the offenses charged . . . are of the same or similar character or are based . . . on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Defendant thus could in no event have been prejudiced by the failure of the indictment to charge two conspiracies rather than one. Indeed, even if the indictment could properly have charged only the Wong Lim aspect of the conspiracy, evidence of the later dealings with Mong Wong would still have been admissible to show appellant's intent with respect to the Wong Lim transactions.[2] See *United States v. Marchisio,* 344 F.2d 653, 667 n. 11 (2 Cir. 1965); *cf. United States v. Papadakis,* 510 F.2d 287, 294 (2 Cir.), *cert. denied,*

1. Thus, even if the evidence could have been interpreted as showing two conspiracies, it would have been improper under the circumstances for the judge to have instructed the jury that they must acquit if they should find more than one conspiracy.

2. Appellant's intent was clearly an issue in the case. Appellant's counsel in his cross-examination of the government agents brought out the fact that in their conversations with appel-

lant they did not refer to heroin but rather to "the stuff," which, the agents testified, was understood by all concerned to refer to heroin. In his summation, appellant's counsel stressed the fact that appellant never referred to heroin, and suggested that "the stuff" may have meant something other than heroin. The fact that appellant was involved in other similar drug transactions was certainly relevant to show that "the stuff" referred to heroin.

421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975).

By deciding to require the government to submit only one of the conspiracies to the jury, Judge Conner gave appellant more than he was entitled to. Appellant could only have been benefitted by the deletion of an overt act from the indictment. We cannot see how appellant suffered any prejudice by the actions of the trial judge.

■ Furthermore, the striking of the fifth overt act cannot be considered an impermissible amendment of the indictment by the court. It is true that the Supreme Court in *Ex parte Bain,* 121 U.S. 1, 9–10, 7 S.Ct. 781, 786, 30 L.Ed. 849, 852 (1887), stated that "[t]he party can only be tried upon the indictment as found by such grand jury, and especially upon all its language found in the charging part of that indictment." But in *Salinger v. United States,* 272 U.S. 542, 548–49, 47 S.Ct. 173, 175, 71 L.Ed. 398, 402–03 (1926), the Court held that the withdrawal by the court from the jury of all but one of several schemes to defraud charged in the indictment did not constitute an impermissible amendment of the indictment. And in *Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252, 256 (1960), the Court stated that *Bain* merely stood for the rule that "a court cannot permit a defendant to be tried on charges *that are not made in the indictment against him*" (emphasis added). In the instant case, the court in no way supplemented the indictment handed up by the grand jury or modified it so as to charge appellant with a new and different crime. Rather, the court merely ordered that a separate part of the indictment be deleted. As we noted in *United States v. Cirami,* 510 F.2d 69, 72–73 (2 Cir.), *cert. denied,* 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 451 (1975), the *Stirone* Court "appear[ed] to express concern only with the addition of charging language, rather than its deletion." We cannot say that the action of the court in striking an overt act improperly amended the indictment.

■ Finally, we cannot accept appellant's contention that his conviction must be re-

versed because he was denied the protections of the double jeopardy clause. If appellant is ever again indicted for any of the crimes which might arguably have been encompassed by the jury verdict or by the indictment in the case at hand, it will then be time enough for him to assert his double jeopardy defenses to that prosecution. It suffices to say that appellant has not shown any sufficient reason why his *present* conviction should be overturned.

The judgment of conviction is affirmed.