UNITED STATES of America, Appellee,

v.

Eugene COREY, Defendant-Appellant.

No. 227, Docket 77–1308.

United States Court of Appeals,
Second Circuit.

Argued Oct. 13, 1977.

Decided Nov. 30, 1977.

Irving Anolik, New York City, for appellant.

Frederick T. Davis, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., John J. Kenney, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before SMITH, MANSFIELD and OAKES, Circuit Judges.

OAKES, Circuit Judge:

Appellant, Eugene Corey, was convicted of wire fraud, mail fraud, and conspiracy, in violation of 18 U.S.C. §§ 1343, 1341, and 371, following a five-day jury trial in the United States District Court for the Southern District of New York, Constance Baker Motley, *Judge.*[1] The evidence, the sufficiency of which is not in question, revealed appellant's acceptance of kickbacks from those supplying business forms to his employer and his cooperation in short shipments and overbilling by the suppliers.

Corey makes several contentions on appeal. His claims of improper federal jurisdiction over what is essentially a state offense—commercial bribery—[2] and of im-

---

1. Appellant was sentenced to one year's imprisonment on each of the three counts to run concurrently and was granted bail pending appeal.

2. This claim, raised for the first time after trial, is frivolous. To prove a violation of 18 U.S.C. § 1341, the Government need only show that a defendant was one of the participants in a scheme to defraud, and that the mails were used in furtherance of that scheme. *See, e. g.,* *United States v. Cyphers,* 556 F.2d 630, 632 (2d Cir. 1977); *United States v. Finkelstein,* 526 F.2d 517, 526–27 (2d Cir. 1975), *cert. denied sub nom. Scardino v. United States,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976). Similarly, to prove a violation of 18 U.S.C. § 1343, it need only be shown that a defendant was one of the participants in a fraudulent scheme which was furthered by the use of interstate transmission facilities. *United States v. Houli-*

proper submission of the conspiracy count to the jury[3] are wholly without merit. His other contentions, involving the admissibility of prior act evidence and alleged prosecutorial misconduct in informing the jury that Corey had changed his name, while substantial enough to merit discussion, do not require reversal. Accordingly, we affirm.

Corey argues that the trial court erred in permitting the prosecution to cross-examine him concerning his dismissal from previous employment at Columbia Broadcasting System (CBS) for falsifying his W–2 form and overtime hours record. Over objection, the testimony was permitted under Rule 404(b) of the Federal Rules of Evidence,[4] as a prior similar act establishing guilty knowledge, by tending to show that Corey had signed documents acknowledging the receipt by his employer, Hartz Mountain, of data processing supplies, knowing the documents to be falsified. His CBS dismissal had occurred some sixteen years prior to the date of trial.[5]

While evidence of prior similar acts is admissible to show guilty knowledge, *United States v. Santiago,* 528 F.2d 1130,

1134 (2d Cir.), *cert. denied,* 425 U.S. 972, 96 S.Ct. 2169, 48 L.Ed.2d 795 (1976), and the trial court is given wide discretion in admitting such evidence, *United States v. Feldman,* 136 F.2d 394 (2d Cir. 1943), *aff'd,* 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408 (1944), the scope of that discretion does not permit introduction of every prior similar act which may contribute in some manner to a showing of intent. *United States v. Byrd,* 352 F.2d 570, 575 (2d Cir. 1965). Rather, it must appear that the probative value of such evidence outweighs the potential for prejudice against the defendant. *United States v. Deaton,* 381 F.2d 114, 117 (2d Cir. 1967). Probative value is dependent on the existence of a "close parallel" between the crime charged and the acts shown. *United States v. Chestnut,* 533 F.2d 40, 49 (2d Cir.), *cert. denied,* 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 93 (1976), *quoting United States v. Leonard,* 524 F.2d 1076, 1091 (2d Cir. 1975), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1737, 48 L.Ed.2d 202 (1976).

Whether there is sufficient similarity between the crime charged and the prior act to provide a basis for inferring that appellant acted intentionally or knowingly in

han, 332 F.2d 8, 13 (2d Cir.), *cert. denied,* 379 U.S. 828, 85 S.Ct. 56, 13 L.Ed.2d 37 (1964).

3. Appellant contends that a jury charge on multiple conspiracies should have been given because his transactions with the two defrauding suppliers were separate. Even if there were two conspiracies, however, the fact that only a single conspiracy was charged did not and could not have prejudiced the defendant by spillover or otherwise. *United States v. Sir Kue Chin,* 534 F.2d 1032 (2d Cir. 1976), is sufficiently similar to be dispositive of this claim. It points out, *id.* at 1035, that single/multiple conspiracy analysis does not apply to the trial of a single defendant. Here, appellant stood trial alone. Moreover, his central role in promoting fraud on his employer by both suppliers negates any suggestion that the jury might have applied the wrong evidence to the conspiracy charge.

4. Rule 404(b) provides:
    Evidence of other crimes, wrongs, or acts is not admissible to prove character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation,

plan, knowledge, identity, or absence of mistake or accident.
    Fed.R.Evid. 404(b).
    Rule 404 essentially codified previously existing Second Circuit law on the admissibility of prior similar act evidence. *See, e. g., United States v. Papadakis,* 510 F.2d 287, 294 (2d Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975).

5. Appellant's main objections to the admission of this testimony are that it was too remote to be considered and that it was not a similar act within the meaning of Fed.R.Evid. 404(b). An additional ground for objection is unfair surprise, in that defense counsel rather vaguely asked the Government if it intended to "go beyond" Corey's employment at Hartz Mountain and received a negative reply. While the prosecuting attorney may have played it a bit close to his chest, the Government is under no obligation stemming from *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to bring to the defendant's attention matters he already knows. *United States v. Robinson,* 560 F.2d 507, 517–18 (2d Cir. 1977) (en banc); *United States v. Stewart,* 513 F.2d 957, 959–60 (2d Cir. 1975).

committing the crime is a close question. On the one hand, there is some similarity in method—the submission of false documents to an employer. On the other, the fact that Corey may have deliberately falsified his own overtime hardly proves that he had the knowledge or intent to falsify purchases of supplies by Hartz Mountain from third parties.

Undoubtedly, the attenuated similarity between the two acts demonstrates the low probative value of the CBS incident as circumstantial evidence of intent to commit the crimes here charged. The minimal relevancy of the CBS incident is further buttressed by its remoteness in time, having occurred sixteen years before the trial and between five and seven years before Corey allegedly began his fraudulent conduct at Hartz Mountain. *See* C. McCormick, *McCormick's Handbook of the Law of Evidence* 439 n.30 (2d ed. E. Cleary ed. 1972) ("In appraising the probative worth of the offered evidence, before determining whether it is outweighed by the countervailing dangers, the distance in time of the facts offered will often cause the court to discount its value."); *cf.* Fed.R.Evid. 609(b) (generally restricting the use of convictions to impeach the credibility of a witness to convictions rendered within ten years).

■ In any event, assuming error in the admission of the testimony, we hold that the error was harmless. We do not find that appellant was sufficiently prejudiced by the admission of the CBS evidence to require reversal of his conviction. The case against him was strong, the incidents of fraud many, the amounts and time period involved substantial, and the witnesses against him the suppliers themselves. A nonconstitutional error, as in the case of erroneous admission of similar act evidence, is harmless if it is "highly probable" that the error did not contribute to the verdict. *Virgin Islands v. Toto,* 529 F.2d 278, 283–84 (3d Cir. 1976), *quoting* R. Traynor, *The Riddle of Harmless Error,* 35 (1970). Where there is overwhelming evidence of guilt, as there was here, erroneous evidentiary rulings on such collateral matters are often

harmless. *See United States v. Earl,* 529 F.2d 1145, 1147–48 (6th Cir.), *cert. denied,* 426 U.S. 938, 96 S.Ct. 2656, 49 L.Ed.2d 391 (1976); *Rothschild v. New York,* 525 F.2d 686, 687 (2d Cir. 1975); *United States v. Rowan,* 518 F.2d 685, 692 (6th Cir.), *cert. denied,* 423 U.S. 949, 96 S.Ct. 368, 46 L.Ed.2d 284 (1975).

■ Corey also urges that the Government committed reversible error when it elicited the personal opinion of Leonard Stern, the president of Hartz Mountain, as to appellant's guilt. This contention misstates the record. Mr. Stern was called by the Government in rebuttal on the last day of trial to refute Corey's explicit statement that he had been given permission to make personal use of Hartz Mountain's computers for his own business ventures. Defense counsel then "opened the door" to the inquiry in question, as Judge Motley found, by asking the witness for his opinion of Corey's honesty in the period before discovery of the fraud. On recross-examination, after the defense had elicited opinion testimony, the witness gave his opinion regarding Corey's honesty after the fraud was discovered. No opinion on ultimate guilt or innocence with regard to the crime charged was ever proffered. We find no error here. The Government was simply refuting appellant's previously introduced evidence of good character with evidence of bad character. Fed.R.Evid. 404(a)(1); *United States v. Pagano,* 224 F.2d 682, 686 (2d Cir.), *cert. denied,* 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 779 (1955) (attempt to portray defendant in favorable light as family man with modest income opens door to prosecution inquiry into those issues to impeach credibility).

■ Appellant further asserts that he was prejudiced when the prosecution sought to identify him as Jewish by referring to the fact that he had changed his name from Cohen to Corey. While we are aware of nothing to indicate that identification of Corey as a person of the Jewish faith would have in any way prejudiced him before the jury, we nonetheless address this issue, lest the judgment have a malodorous

air, or bad faith use of an appeal to bias by the Government, *see United States ex rel. Haynes v. McKendrick,* 481 F.2d 152 (2d Cir. 1973), be erroneously inferred.

The Government explains that in making the inquiry of Corey it thought that the name change was catalyzed by Corey's wrongdoing at CBS. It therefore posed the question to support the contention that appellant had acknowledged his guilt stemming from the CBS incident, evidence of which the Government had been allowed to introduce as a prior similar act. We do not impugn any bad motive to the Government in this regard; in fact, the record and the post-trial affidavit of the prosecuting attorney support the Government's assertion that it reasonably believed that the name change was precipitated by the CBS conduct. When defense counsel revealed that Corey had changed his name long before the CBS incident, the line of questioning was immediately abandoned.

■ Although this reference to the name change was unfortunate, any possible resulting prejudice was dispelled by the prompt action of the trial judge, who made certain that the jury was apprised of the real reason for the change.[6] The complete picture surrounding the name change—preservation of the integrity of Corey's family unit in light of his remarriage and adoption of his wife's son—once conveyed to the jury surely negated any potential prejudice that might have been caused by an incomplete presentation of the true facts. Indeed, it tended to portray Corey in a most sympathetic light before the jury, having quite the opposite effect from the prejudice he alleges. We cannot reverse when an error ultimately inures to the benefit of defendant. *See, e. g., United States v. Frattini,* 501 F.2d 1234, 1237 (2d Cir. 1974) (error in admission of evidence favorable to defendant); *United States v. Stromberg,* 268 F.2d 256, 266 (2d Cir.) (erroneous charge overly favored defendant), *cert. de-*

*nied,* 361 U.S. 863, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959).

We continue to note that the perfect trial, from the prosecution or the defense standpoint, is as rare as the perfect crime. *Jones v. United States,* 262 F.2d 44, 48 (4th Cir.), *cert. denied,* 359 U.S. 972, 79 S.Ct. 886, 3 L.Ed.2d 838 (1958). This case is no exception. Nevertheless, appellant was given a fair, impartial trial. We detect no error of sufficient prejudicial magnitude to require reversal.

Affirmed.

---

**6.** Judge Motley determined that an explanation of the name change would be less prejudicial than discontinuing this line of questioning entirely. In view of appellant's counsel's hearty agreement, it is difficult to understand why he now complains that the matter was not immediately dropped.