**UNITED STATES of America,**

v.

**Krishendat BALJIT, Defendant.**

**No. 01 CR. 389(VM).**

United States District Court,
S.D. New York.

April 11, 2002.

See also 202 F.Supp.2d 196.

David Berardinelli, United States Attorney, Criminal Division, New York City, for U.S. Attorneys.

### ORDER

MARRERO, District Judge.

On October 23, 2001, defendant Krishendat Baljit (hereinafter "Baljit") filed a motion to preclude the Government's use of statements that he made during voluntary appearances made at "proffer sessions" with Government representatives. In an Order dated March 5, 2002, the Court denied Baljit's motion and indicated that it would provide a detailed explanation of the basis and authority for its decision at the start of the trial. On March 12, 2002, the Court explained its reasoning for the March 5, 2002 Order in a statement on the record and also ruled on two *in limine* motions that had been filed by the Government. The Court hereby directs that its March 5, 2002 Order be amended by incorporating the Court's statement on the record, a copy of which is attached hereto.

**SO ORDERED.**

**Statement of the Court Regarding Defendant Krishendat Baljit's Motion to Preclude Statements Made at Proffer Sessions and the Government's Motions *In Limine***

March 12, 2002

In this statement, the Court addresses several issues. The first relates to defendant Baljit's motion to preclude the use at trial of statements that he made at proffer sessions with the Government. The second issue relates to the Government's motion on the admissibility of testimony that Baljit hid mail that was dated incorrectly. The third and final issue relates to the Government's motion on the admissibility of evidence that the defendant's brother, Deodat Baljit, tampered with the "H6" meter.

### Baljit's Motion to Preclude Proffer Session Statements

On October 23, 2001, defendant Baljit filed a motion to preclude the use of statements that he made at proffer sessions with the Government, asserting, among other things that: (1) the Government knew that counsel who represented him at the time he participated in the proffer sessions was laboring under multiple irreconcilable and unwaivable conflicts of interest, violating Baljit's right under the Fifth Amendment to the United States Constitution to be free from self-incrimination and his Sixth Amendment right to counsel; and (2) the Government had an obligation to call those conflicts of interest to the Court. On November 13, 2001, the Government filed papers in opposition to Baljit's motion, asserting, among other things, that: (1) Baljit's Fifth Amendment right to be free from self-incrimination was not violated; (2) Baljit did not have a Sixth Amendment right to counsel during the proffers sessions; and (3) the Government fully complied with its ethical obligations.

In a Decision and Order dated March 5, 2002, the Court denied defendant Baljit's motion, finding no violation of either his Fifth Amendment right to be free from self-incrimination or his Sixth Amendment right to counsel under the circumstances at issue. The Court also indicated that it would provide a detailed explanation of the basis and authority for the decision at the start of the trial.

■ The Court made two observations that were relevant to its analysis of the issues presented in defendant Baljit's motion. First, there was neither evidence that Baljit was in custody when he met with Government representatives at the

proffer sessions in question nor was there evidence that he was compelled to attend those meetings. There was also nothing in the record to suggest that Baljit made statements to the Government against his will. In fact, a review of the proffer agreements attached to the instant motion revealed that Baljit was clearly informed that any statements that he made could be used for impeachment purposes should he be prosecuted and should he decide to testify. Accordingly, the Court concluded that defendant Baljit waived his Fifth Amendment privilege against self-incrimination when he voluntarily made inculpatory statements in non-custodial meetings with the Government. *See Minnesota v. Murphy*, 465 U.S. 420, 426–28, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984); *see also United States v. Mast*, 735 F.2d 745, 750 (2d Cir.1984).

 The second observation that the Court made in connection with the instant motion is that Baljit's proffer sessions occurred well before the Government initiated any formal proceedings against him. Accordingly, Baljit had neither a Sixth Amendment right to counsel at the time he participated in the proffer sessions nor a corollary Sixth Amendment right to conflict-free counsel. The right to counsel does not attach until the initiation of formal judicial proceedings, "whether by way of formal charge, indictment, preliminary hearing, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The principal case on which Baljit relies in his motion, *United States v. Ming He*, 94 F.3d 782 (2d Cir. 1996), is inapposite. The defendant in that case made inculpatory statements in debriefing sessions that occurred after he had been indicted and after he had pleaded guilty. In contrast, Baljit made inculpatory statements in this case long before his indictment.

### Government's Motion to Introduce Evidence that Baljit Hid Incorrectly Dated Mail

On February 28, 2002, the Government filed a number of pretrial motions. The Government has withdrawn several of these motions but there are two before the Court that Baljit has opposed. In the first motion, the Government seeks a ruling on the admissibility of testimony, pursuant to Federal Rule of Evidence 404(b), that Baljit, in violation of United States Postal Service rules and regulations, hid metered mail that was dated incorrectly behind correctly dated mail to avoid detection by postal officials that some mail was not being transported to the post office for processing on the same day it was stamped by the postal meter. The Government concedes that this conduct did not cause any financial loss to the Postal Service, but asserts that it provides background evidence of the charged conspiracy and demonstrates the "attitude of illegality that permeated at API; an attitude that fostered the commission of the charged postage meter fraud."

 Under the "inclusionary approach" to Federal Rule of Evidence 404(b) followed in this Circuit, evidence of prior acts is admissible for any purpose other than to show a defendant's criminal propensity. *See United States v. Pitre*, 960 F.2d 1112, 1118 (2d Cir.1992) (citing *United States v. Roldan–Zapata*, 916 F.2d 795, 804 (2d Cir. 1990)). Evidence of prior acts may be admitted to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed. *See id.* (citing *Roldan–Zapata*, 916 F.2d at 804). Such evidence may also be admitted to prove intent or knowledge when a defendant's intent or

knowledge is clearly at issue. *See id.* (citing *United States v. Caputo,* 808 F.2d 963, 968 (2d Cir.1987)).

■ However, it is an abuse of discretion for a trial court to admit other-act-evidence "if the other act or acts are not sufficiently similar to the conduct at issue." *United States v. Afjehei,* 869 F.2d 670, 674 (2d Cir.1989). Although conceivably Baljit's alleged hiding of incorrectly dated mail could provide some background to the charged conspiracy, far too many inferences would be necessary to make the required connection. While the alleged hiding of mail occurred during the same period of time and at the same location as the charged conspiracy, this misconduct, which caused no financial loss to the Postal Service and was qualitatively different from the crimes charged in the Indictment, has little or no bearing on the nature of the alleged conspiracy to defraud the Postal Service out of millions of dollars.

■ Similarly, Baljit's alleged hiding of incorrectly dated mail has little or no bearing on the issue of whether he knowingly became a member of the charged conspiracy. There may be numerous other plausible explanations for the hiding of incorrectly dated mail other than some link, however tenuous, to Baljit's alleged conspiratorial acts. Similarly, the parties who were primarily responsible for the hiding of mail may not necessarily have had any knowledge of or involvement in the mail fraud conspiracy actually charged. Rule 404(b) does not authorize the admission of "any and every sort of other-act evidence simply because a defendant proffers an innocent explanation for the charged conduct." *Gordon,* 987 F.2d at 908 (citing *United States v. Corey,* 566 F.2d 429, 431 (2d Cir.1977)). To the contrary, the Second Circuit has indicated that:

> "Evidence of another act should not be admitted to show knowledge unless the other act is sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge inference advocated by the proponent of the evidence. Similarity, being a matter of relevancy, is judged by the degree in which the prior act approaches near identity with the elements of the offense charged. There is no necessity for synonymity but there must be substantial relevancy. If the other-act evidence does not provide a reasonable basis for inferring knowledge, its offer for that purpose should be rejected on the grounds of relevance. Thus, the probative value of the proffered evidence depends largely on whether or not there is a 'close parallel between the crime charged and the acts shown.'"

*Gordon,* 987 F.2d at 908 (citing *Afjehei,* 869 F.2d at 674 and *Corey,* 566 F.2d at 431).

For the reasons just discussed, the Court finds that there is insufficient similarity between the charged conspiracy and the alleged hiding of mail to allow its introduction to prove that Baljit knowingly became a member of the conspiracy. Accordingly, the Government is precluded from introducing testimony on defendant Baljit's alleged hiding of incorrectly dated mail at trial.

### Government's Motion to Introduce Evidence that Baljit's Brother, Deodat, Tampered with the "H6" Postal Meter

■ In the Government's second motion opposed by Baljit, it seeks a ruling on the admissibility of evidence that: (1) Deodat Baljit tampered with the "H6 meter" to print free postage, and (2) the following day Deodat and the defendant were seen talking together while inspecting the location where Deodat had tampered with the meter. Such evidence could potentially provide direct proof of the charged con-

spiracy. *See United States v. Thai,* 29 F.3d 785, 812 (2d Cir.1994); *see also United States v. Concepcion,* 983 F.2d 369, 392 (2d Cir.1992). In addition, the Court finds that the alleged tampering with the H6 meter is no more sensational than the crimes charged in this case and concludes that the probative value of such evidence outweighs any prejudicial effect that it may have. Accordingly, the Court concludes that the evidence is admissible. As the Government suggests in its motion, the defendant is free to propose a limiting instruction to prevent the jury from inferring that he participated directly in the tampering with the H6 meter.