**UNITED STATES of America,**

v.

**RUBIN/CHAMBERS, DUNHILL INSURANCE SERVICES,
et al., Defendants.**

**No. 09 Cr. 1058.**

United States District Court,
S.D. New York.

Nov. 4, 2011.

452

Rebecca Meiklejohn, Steven Tugander, Charles Vincent Reilly, Eric C. Hoffmann, Kevin Bradford Hart, U.S. Department of Justice, Antitrust Division, New York, NY, Lucy Pepe McClain, U.S. Department of Justice, Antitrust Division, Philadelphia, PA, for Plaintiff.

Richard William Beckler, Robert H. Cox, Howrey LLP, Washington, DC, Adam Stewart Katz, Bradley Drew Simon, Brian David Waller, Kenneth Charles Murphy, Simon & Partners, LLP, John Joseph Kenney, Laura B. Hoguet, Hoguet Newman Regal & Kenney, LLP, Juan Alden Skirrow, Willkie Farr & Gallagher LLP, Michael Gerard McGovern, Alyssa Ziegler, Steven S. Goldschmidt, Ropes & Gray, LLP, Daniel Louis Zelenko, Shamiso Kristen-Faith Maswoswe, Crowell & Moring LLP, New York, NY, Donald Etra, Donald Etra, Law Office, Los Angeles, CA, Amanda Nicole Raad, Ropes & Gray

LLP, Chicago, IL, Jeffrey H. Rutherford, Crowell & Moring LLP, San Francisco, CA, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Defendants Rubin/Chambers, Dunhill Insurance Services, Inc. ("CDR"); David Rubin ("Rubin"); Zevi Wolmark a/k/a Stewart Wolmark ("Wolmark"); and Evan Andrew Zarefsky ("Zarefsky") (collectively, "Defendants") were indicted on October 29, 2009 and charged with crimes arising out of an alleged conspiracy by Defendants and others to illegally rig bids, fix prices and manipulate the market for investment instruments known as municipal derivatives. On December 7, 2010, the Government filed a superseding indictment alleging nine counts.[1]

One of the central issues in this matter is whether certain practices of Defendants represented overt acts in furtherance of conspiracies to violate federal antitrust and fraud statutes. On several occasions, the Government has disclosed to Defendants various lists of transactions that it intends to "feature" as overt acts at trial (the "Featured Transactions"). In its Final Bill of Particulars (the "BOP"), the Government includes 210 transactions that allegedly substantiate the conspiracies charged in the superseding indictment.

Now before the Court is Defendants' motion, dated October 11, 2011, for an order, pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), directing the Government to identify and produce, in "bucketed" form, audio files, documents and other materials related to transactions that are not listed in the BOP but which Defendants contend contain arguably exculpatory or impeachment material. The discovery already produced—the comprehensiveness of which Defendants do not question—is largely in searchable formats and the Government has provided searchable digests of the audio files it reviewed. Additionally, the Government has provided Defendants with searchable metadata for the audio files and transcripts of those files when available. Defendants do not seek the turnover of any material that has not already been produced by the Government; rather, Defendants request that the Government reproduce in categorized batches documents that relate to transactions with certain characteristics.

Specifically, Defendants ask that the Government be instructed to produce discrete collections of documents and electronic files that relate to four categories of transactions, and that such production be organized and formatted so as to indicate to which of those four categories each document or electronic file relates.[2] Defendants frame each of the four categories as including transactions that test or refute an aspect of the Government's theory of

---

1. By Decision and Order dated July 20, 2010, this Court dismissed Count 9 of the Indictment, which charged Rubin with bank fraud under 18 U.S.C. § 1005. *United States v. Rubin/Chambers, Dunhill Ins. Servs.,* 798 F.Supp.2d 517, 528–29 (S.D.N.Y.2011).

2. Because Defendants ask that the Government be ordered to perform searches and analyses to determine which files or documents should be sorted into Defendants' four categories of requested material, the situation

here is fundamentally different from that addressed by the July 1, 2011 agreement in *United States v. Carollo,* s110 Cr. 654(HB) (S.D.N.Y. Dec. 7, 2011) (Docket No. 42). There, the Government agreed to identify materials related to transactions it had already classified as falling into categories considered relevant by the defendants. The Government in *Carollo* agreed neither to re-produce nor to perform new searches or analyses of any documents or files.

collusion.[3] Defendants contend that evidence of transactions that fall within the four categories is probative of the intentions they possessed when entering into the Featured Transactions. Defendants also contend that the evidence in the four categories would be useful to impeach the testimony of cooperating witnesses who will testify as to Defendants' intent in entering into the Featured Transactions.

Because the Court finds that *Brady* and its progeny impose no obligation on the Government to organize for Defendants in the format they design material already provided to them, Defendants' motion is denied.

## I. *DISCUSSION*

 To establish a violation of *Brady*, a defendant must show "(1) that the government failed to disclose favorable evidence, and (2) that the evidence it 'suppressed' was material." *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir.1995). Under *Brady* and its progeny, the Government has a duty to disclose favorable evidence known to it, even if the defense makes no specific disclosure request. *Id.*; *Kyles v. Whitley*, 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Material is "favorable," and therefore must be disclosed to defendants, if it is exculpatory or useful for purposes of impeachment. *Giglio v. United States*, 405 U.S. 150, 153–55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). However, "evidence is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence."

*Payne*, 63 F.3d at 1208 (internal quotation marks, citations, and alterations omitted).

 " 'While the Supreme Court in *Brady* held that the Government may not properly conceal exculpatory evidence from a defendant, it does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case.' " *United States v. Ohle*, No. 08 Cr. 1109, 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011) (*quoting United States v. Marrero*, 904 F.2d 251, 261 (5th Cir.1990)), *aff'd*, 441 Fed.Appx. 798 (2d Cir.2011). The Government is under no general obligation to sort or organize *Brady* material disclosed to defendants. *See United States v. Skilling*, 554 F.3d 529, 576 (5th Cir.2009) ("As a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence."), *aff'd in part and vacated on other grounds*, —— U.S. ——, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010). If the rule were otherwise, it would "place prosecutors in the untenable position of having to prepare both sides of the case at once." *Ohle*, 2011 WL 651849, at *4.

In certain circumstances and acting under their discretionary authority to manage the cases before them, some courts have required prosecutors to identify *Brady* material contained in a previously disclosed but "voluminous" production of documents and data. *See United States v. Salyer*, Cr. S–10–0061, 2010 WL 3036444, at *2 (E.D.Cal. Aug. 2, 2010) ("[It] is established, as a *general* rule, that if *Brady/Giglio* [materials] were disclosed ...

---

**3.** For example, part of the Government's theory is that Defendants provided "last looks" as to pricing information to favored financial institutions with the anti-competitive intent of permitting those favored entities to place winning bids for investment contracts; accordingly, Defendants request a single production of all deals in which pricing information was provided to alleged co-conspirators but those alleged co-conspirators did not ultimately secure the investment contract on offer.

the government['s failure to] identify it as such will not [constitute reversible error]. However, that . . . does not preclude [this Court,] . . . as a matter of case management (and fairness) [,] . . . [from] ordering identification to be done." (emphasis in original)); *United States v. Hsia*, 24 F.Supp.2d 14, 29 (D.D.C.1998); *Cf. Skilling*, 554 F.3d at 577 ("We do not hold that the use of a voluminous open file can never violate *Brady.*").

■ Nonetheless, it is apparent that prosecutors may satisfy their *Brady* obligations through "open file" policies or disclosures of exculpatory or impeachment material within large productions of documents or files. *See Strickler v. Greene*, 527 U.S. 263, 283 n. 23, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) ("We certainly do not criticize the prosecution's use of an open file policy. We recognize that this process may increase the efficiency and the fairness of the criminal process."); *United States v. Warshak*, 631 F.3d 266, 297 (6th Cir.2010) ("The defendants next argue that the government shrugged off its obligations under *Brady* by simply handing over millions of pages of evidence and forcing the defense to find any exculpatory information contained therein. This argument comes up empty."); *Skilling*, 554 F.3d at 576; *Ohle*, 2011 WL 651849, at *3.

The cases in this area tend to draw the same distinction: Absent prosecutorial misconduct—bad faith or deliberate efforts to knowingly hide *Brady* material—the Government's, use of "open file" disclosures, even when the material disclosed is voluminous, does not run afoul of *Brady*. *See Warshak*, 631 F.3d at 297–98 (finding no evidence of prosecutorial "bad faith" in disclosure); *Skilling*, 554 F.3d at 577 (finding no *Brady* violation where there was no indication that government knowingly hid exculpatory evidence within voluminous disclosure); *Ohle*, 2011 WL 651849 at *4 ("[E]xceptions to these general principles may exist if it is found that the Government deliberately hid documents within a larger mass of materials or somehow purposefully confounded the defendant's search for exculpatory material.").

■ Here, there is no allegation of prosecutorial bad faith or that the Government has deliberately hid what it knowingly identified as *Brady* needles in the evidentiary haystacks of its disclosures to Defendants. Defendants' baldly assert that "the government undeniably encountered exculpatory audio that is inconsistent with its theory of Defendants' guilt. Yet the Government failed to identify that audio during its review, knowing full well that Defendants likely would be unable to find it once it was placed back into the mass of discovery later produced to the defense." (Memorandum of Law in Reply to the Government's Opposition to Defendants' Motion for Identification and Disclosure of *Brady* Material ("Defendants' Reply") (Docket No. 257) at 5.) This bare, conclusory allegation does not justify an order requiring the Government to undertake the organizational and analytical burdens that Defendants would foist upon it to facilitate the preparation of their defense.[4]

---

4. Defendants' underlying position as to the relevance and admissibility of the categories of materials they request is an issue *sub judice* and presented in one of the Government's motions *in limine*. Essentially, Defendants argue that any and all evidence of deals that do not fit the Government's theory is exculpatory and valuable for impeachment purposes. (*See, e.g.,* Memorandum of Law in Support of

Defendants' Motion for Identification and Disclosure of *Brady* Material (Docket No. 196) at 9 (describing Government's failure to identify "deals that do not square with the government's favoritism theory or otherwise indicate a lack of criminal intent"); Defendants' Reply at 3–4 (evidence sought is relevant to show that "Defendants' interactions with" alleged co-conspirators did not always fit Govern-

The case Defendants most heavily rely upon does not alter this conclusion. In *United States v. Salyer*, the court found "no authority which prohibit[ed] the court's exercise of discretion" in ordering the Government to identify as *Brady* material documents or evidence already disclosed to the defendant in a large production. 2010 WL 3036444, at *2. The *Salyer* Court distinguished that case from most other cases, which deny such relief, based on the particular facts presented by the defendant:

> In the present case, there is a singular, individual defendant, who is detained in jail pending trial, and who is represented by a relatively small defense team. There is no parallel civil litigation, and Salyer does not have access to voluntary corporate assistance in attempting to find the documents needed by the defense. Salyer has little practical ability in the jail setting to be of much assistance in the search as he can do no document review, either hard copy or electronically, absent the physical presence of counsel in the jail.

*Id.* at *7.

The situation in this case is entirely different. As in the cases distinguished in *Salyer*, here several basic differences compel an opposite result: the already-disclosed materials are electronic and searchable; Defendants have access to corporate assistance in their defense—in fact, one defendant is the corporation that employed the individual defendants, one of whom is the principal shareholder and chief executive; there has been ongoing parallel civil litigation with overlapping documents and evidence; there are multiple defendants here with overlapping discovery needs—as evidenced by Defendants' choice to file this motion jointly; Defendants are not incarcerated pre-trial, and are therefore unencumbered in assisting the preparation of their own defenses; finally, unlike *Salyer*, there can be no straight-faced claim of a "small defense team." [5] *Id.* at *6–7.

Furthermore, the prosecution here has undertaken many additional steps to relieve some of the burden of its "voluminous" disclosure, so that Defendants are in at least as good a position as the Government to identify *Brady* material therein. *See Skilling*, 554 F.3d at 576–77 ("The open file was electronic and searchable. The government produced a set of 'hot documents' that it thought were important to its case or were potentially relevant to

---

ment's theory).) Regardless of the potential value of any material sought by Defendants here, *Brady* and its progeny simply cannot be stretched so far as to require what Defendants request. The Government is not required, in the course of its investigation and document review, to have intuited and applied the Defendants' broad notion of what is favorable evidence by identifying and collating individual documents or files related to any and all transactions that, under Defendants' view of exculpatory material, may be interpreted to depict motives inconsistent with the intent alleged to have motivated the Featured Transactions. *See Ohle*, 2011 WL 651849, at *4 ("Placing a higher burden on the Government to uncover such evidence would place prosecutors in the untenable position of having to prepare both sides of the case at once.").

**5.** The collapse of the firm previously representing some of the Defendants and serving as the technical coordinator for the Defendants' discovery review platform, while unfortunate, does not alter the inescapable conclusion here: Defendants are anything but impoverished and certainly not so incapacitated as to warrant shifting such a substantial portion of the burden of preparing their defense to the Government. Each is represented by prominent, sophisticated counsel. The Court is not persuaded that the collective defense team, during the many months they have possessed the discovery the Government has made available, was incapable of searching for the material sought in the disclosures already provided, even if admittedly as voluminous as it is.

Skilling's defense. The government created indices to these and other documents."); *Ohle,* 2011 WL 651849, at *4 ("[T]he Government, to facilitate review of the documents, provided defense counsel with an electronically searchable Concordance database."). Defendants do not assert that defense counsel lacks access to the disclosed materials nor that those materials do not include the documents or files they would have the Government identify here. The Government has provided Defendants with searchable electronic productions; indices describing documents related to the Featured Transactions; indices of audio recordings; and metadata permitting searches of audio recordings. In short, there is no reason to doubt that the Government has provided Defendants with access to all potential *Brady* material and has taken additional steps to facilitate the Defendants' review of that material. *Brady* and its progeny require no more.

Because the Government is under no general obligation to identify or sort *Brady* material within even an extremely voluminous disclosure, and Defendants have failed to persuade the Court that an exception to this general rule is warranted here, Defendants' joint motion is denied.

## II. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Docket No. 195) for the identification and disclosure of *Brady* material of defendants Rubin/Chambers, Dunhill Insurance Services, Inc.; David Rubin; Zevi Wolmark a/k/a Stewart Wolmark; and Evan Andrew Zarefsky is DENIED.

**SO ORDERED.**