UNITED STATES of America,

v.

RUBIN/CHAMBERS, Dunhill Insurance Services, et al., Defendants.

No. 09 Cr. 1058(VM).

United States District Court, S.D. New York.

Dec. 21, 2011.

---

Rebecca Meiklejohn, Steven Tugander, Charles Vincent Reilly, Eric C. Hoffmann, Kevin Bradford Hart, U.S. Department Of Justice, Antitrust Division, New York, NY, Lucy Pepe McClain, U.S. Department of Justice, Antitrust Division, Philadelphia, PA, for Plaintiff.

Joseph Walker, Richard William Beckler, Robert H. Cox, Howrey LLP, Washington, DC, Adam Stewart Katz, Bradley Drew Simon, Simon & Partners, LLP, New York, NY, for Defendant.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Before the Court is a motion *in limine* submitted jointly by defendants Rubin/Chambers, Dunhill Insurance Services, Inc. ("CDR"); David Rubin ("Rubin"); Zevi Wolmark a/k/a Stewart Wolmark ("Wolmark"); and Evan Andrew Zarefsky ("Zarefsky") (collectively, "Defendants") to exclude from evidence all deals, witnesses and exhibits identified after January 18, 2011 (Docket No. 300). In resolving this motion, the Court presumes familiarity with the docket and with all prior decisions and orders in this case.[1]

By this motion, Defendants request that the Court exclude all evidence and witnesses that are identified in the Government's October 31, 2011 final pretrial disclosures but were not identified for use at trial in the Government's "preliminary" evidence lists, which were disclosed to Defendants in January 2011, a year before the scheduled trial in this matter. Because the Court concludes that such a ruling is unnecessary under the circumstances, inconsistent with the governing scheduling order and not compelled by any

---

1. Earlier relevant decisions are reported at *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, No. 09 Cr. 1058, 828 F.Supp.2d 698, 2011 WL 6130812 (S.D.N.Y. Dec. 7, 2011); *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, No. 09 Cr. 1058, 825 F.Supp.2d 451, 2011 WL 5448066 (S.D.N.Y. Nov. 4, 2011); *United States v. Rubin/Chambers, Dunhill Ins.* *Servs.*, No. 09 Cr. 1058, 2011 WL 5116745 (S.D.N.Y. Oct. 21, 2011); *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 798 F.Supp.2d 517 (S.D.N.Y.2011); *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, No. 09 Cr. 1058, 2011 WL 102695 (S.D.N.Y. Jan. 3, 2011).

precedent, Defendants' motion is DE-NIED.

## I. *BACKGROUND*

A brief recapitulation of the events in this litigation that are relevant to the Defendants' motion provides useful context.

The original indictment in this case was issued on October 29, 2009. (Docket No. 1.) The original indictment broadly enumerated certain types of conduct that Defendants allegedly committed in order to advance conspiracies to restrain trade or defraud municipal bond issuers. (*See, e.g.,* Docket No. 1 ¶ 39(a) ("On numerous occasions ... the CDR Defendants participated in interstate phone calls ... during which they gave [co-conspirators] information about the prices, price levels, or conditions of bids from other providers and [a co-conspirator] then used that information....").) The original indictment also described certain specific transactions involving the Defendants as examples of such overt-act conduct.

The Government provided Defendants with its first bill of particulars on December 18, 2009. (*See* Docket No. 29.) That bill of particulars listed transactions, which the Government believed supported each count charged in the original indictment. The Government voluntarily provided Defendants with this bill of particulars, and did so expressly "subject to revision and supplementation." (*Id.* at 3.)

From the outset of this prosecution, the Government has undertaken a number of steps to facilitate the Defendants' preparation of their defense. The Government organized the discovery it provided to Defendants in "deal buckets," which contained and collated all documents and recordings relevant to a particular transaction. The Government twice provided Defendants with lists of alleged kickbacks and, again, accompanied that list with collections of documents organized according to the alleged kickbacks. To expedite Defendants' review and assessment of various types of discovery produced, the Government also provided Defendants with transcripts, indices, interview memoranda and other work product created by Government attorneys and staff during their own preparations.

In November 2010, the Government expressed on the record its intention to demonstrate the existence and illegality of the charged conspiracies by presenting the jury with categories of transactions that share common elements and are illustrative of the criminality alleged. (*See* Memorandum Of Law in Support of Defendants' Joint Motion to Exclude All Deals, Witnesses, and Exhibits Identified After January 18, 2011 From the Government's Case–in–Chief ("Defs' Br."), Ex. H at 35.) The Government stated its intention to offer evidence related to specific transactions to substantiate witness characterizations of how the conspiracy operated and to exemplify the types of conspiratorial conduct enumerated in the indictment.

Throughout late 2009 and 2010, the parties actively conducted discovery, held numerous meet and confers, and repeatedly sought the Court's assistance in communicating about the scope of the conspiracies alleged and what evidence would be presented at trial. After over a year of volleying letters, various discovery motions, and iterative productions of discovery and work product from the Government to Defendants, the parties agreed that the Government would provide its preliminary lists of trial witnesses and evidence to Defendants in January 2011.

On January 18, 2011, the Government disclosed to Defendants several "preliminary" lists regarding what the Government

anticipated presenting at trial. (See, Defs' Br., Ex. G.) The accompanying cover letter described the lists as "subject to revision until June 27, 2011, the date at which the current case management plan calls for the government to provide final lists of witnesses and exhibits it expects to offer in its case-in-chief." (Id. at 1.)

On February 17, 2011, this Court endorsed the parties' joint "final scheduling order" in this case (the "Scheduling Order"). (See Docket No. 104.) The Scheduling Order set October 11, 2011 as the deadline for all parties to file any motions in limine and October 24, 2011 as the revised date for the Government's final witness and exhibit lists.

On August 22, 2011—as prescribed by the Scheduling Order—the Government issued a final bill of particulars listing transactions that allegedly substantiated specific counts of the Superseding Indictment (Docket No. 67).

Upon Defendants' request on behalf of all parties (see Docket No. 164), the Court extended by one week the Government's deadline to produce its final witness and exhibit lists and, on October 31, 2011, the Government timely provided those lists to Defendants.

On December 1, 2011–fifty days after the deadline for such motions and one month after the Government provided Defendants final witness and exhibit lists Defendants filed the instant motion in limine.

At the December 9, 2011 final pretrial conference in this matter (the "Pretrial Conference"), the Government clarified for Defendants and the Court the universe of transactions it plans to present at trial. According to the Government, roughly 30 transactions will be presented with detailed testimony and documentary evidence ("Featured Deals"). An additional set of roughly 30 transactions ("Category Deals") will be the subject of brief and categorical testimony. The Government characterizes the Category Deals as representative of certain types of transactions, and Government witnesses may broadly reference other individual examples of those types of transactions. Further, the witnesses will have prepared summary charts that list those other examples. Though the Government disclaims any intention to devote time to these other examples during direct examination, it concedes that Defendants are entitled to cross-examine the relevant witnesses in detail as to those transactions. As the Court noted at the Pretrial Conference, since the beginning of this prosecution, the number of transactions identified by the Government as potential subjects of presentation at trial has declined from roughly 250 to the present number of roughly 60.

In short, since the day the original indictment was filed, the Government's preparation of its case has exhibited two consistent characteristics: (1) the use of specific transactions as examples of the particular type of widespread conspiratorial activities first alleged in the original indictment, and (2) a gradual reduction in the number of such exemplar transactions that will be presented at trial.

## II. ANALYSIS

■ At bottom, Defendants ask the Court to bind the Government to its expressly preliminary indications of what evidence, witnesses and transactions it would present at trial. The Court is not persuaded, however, that Defendants have been subjected to a "crushing" burden in preparing their defense simply because the Government will present some witnesses, exhibits and transactions that were not specifically identified for use at trial in its preliminary disclosures made nearly a year ago.

Defendants style the instant motion after *United States v. Baum*, 482 F.2d 1325 (2d Cir.1973), a case involving the mid-trial disclosure of a prosecution witness who testified regarding the defendant's prior criminal activities to establish the defendant's knowledge that certain goods were stolen. *Id.* at 1332, 1329. Defendants invoke *Baum* for the proposition that "where a defendant has 'little or no opportunity to meet the impact of [an] attack' of new evidence, and where a continuance to face the new evidence is denied, then new evidence should be precluded." (Defs' Br. at 3 (*quoting Baum*, 482 F.2d at 1332) (alteration in original).)

■ Beyond the obvious factual differences between this case and *Baum*, discussed below, the express premise of *Baum* undermines Defendants' position: "Ordinarily it is disclosure, rather than suppression, that promotes the proper administration of criminal justice." *Id.* at 1331. However, there "is no requirement that the Government disclose the identity of its witnesses before trial, absent 'a *specific* showing that disclosure [is] both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case.'" *United States v. Lorenzano*, No. 03 Cr. 1256, 2005 WL 975980, at *4 (S.D.N.Y.2005) (*citing United States v. Cannone*, 528 F.2d 296, 301 (2d Cir.1975)) (emphasis in original). *See also United States v. Remire*, 400 F.Supp.2d 627, 633 (S.D.N.Y.2005) ("The only showing of need proffered by Remire is that which is common to criminal defendants: the desire to prove his defense through the government's witnesses. This does not amount to the kind of particularized need that would warrant the discovery requested."); *United States v. Pastor*, 419 F.Supp. 1318, 1330 (S.D.N.Y.1976) ("The burden is on the defendants to make some particularized showing of need, beyond the obvious assertion that such a list would facilitate preparation for trial.").

The Government disclosed the transactions, witnesses and exhibits at issue here over two months prior to the scheduled trial and in accordance with the Scheduling Order requested by Defendants. Further, as outlined above, from the outset, the Government has consistently presented the types of conduct that it alleges violated federal law and has made ongoing and appropriately iterative disclosures of the specific transactions, witnesses and exhibits it intends to present at trial. Defendants have failed to cite any authority or persuasive argument that would justify requiring the Government to freeze the preparation of its case a year before trial.

The Government's basic position regarding what conduct of Defendants constituted illegal activity has not changed since the original indictment was filed in October 2009. Defendants do not assert that it has. The Government has, however, altered which specific facts it plans to present at trial to substantiate its allegations of the Defendants' conduct and intentions. Such changes, however, do not deprive Defendants of the "opportunity to meet the impact of [an] attack' of new evidence," because Defendants have long been on notice of what types of conduct the Government will argue was illegal. Defendants have had the full duration of this prosecution to craft a defense that "meet[s] the impact" of the Government's case, regardless of which particular transactions or documents are used to support it.

The instant case is, on the facts, crucially distinguishable from those cases cited by Defendants. First and foremost, unlike *Baum* and *United States v. Gasparik*, 141 F.Supp.2d 361, 366–68 (S.D.N.Y.2001), this case does not involve the mid-trial disclosure of a witness. Even now, the large, sophisticated defense teams here have

weeks to prepare before the individual witnesses at issue would testify.

Even farther afield are *United States v. Stein,* 521 F.Supp.2d 266, 268 (S.D.N.Y. 2007), and *United States v. Daugerdas,* No. 09 Cr. 584, 2011 WL 573587, at *1–2 (S.D.N.Y. Feb. 16, 2011). In each of those cases, the court excluded evidence that prosecutors sought to admit under Federal Rule of Evidence 404(b) ("Rule 404(b)"), which expressly requires notice to defendants of the evidence to be presented.[2] *See* Rule 404(b)(2) ("[T]he prosecutor must: (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial ....").

■ None of the evidence, witnesses or transactions at issue on this motion constitutes "other act" evidence under Rule 404(b), and so this required notice provision—and cases relying upon it—do not apply here. It is worth noting, however, that even where the Federal Rules of Evidence mandate notice to defendants of certain evidence, the rules require disclosure only of the "general nature" of such evidence—not the itemized and particularized enumeration that Defendants argue the Government should have provided a year prior to trial in this case.

As in the context of other motions in *limine,* during trial, considerations of cumulativeness, prejudice and delay may ultimately justify the exclusion, under Federal Rule of Evidence 403, of some of the evidence at issue on this motion. However, as demonstrated above, the background and procedural history of this case do not support a pretrial ruling that Defendants

will necessarily be prejudiced by the introduction at trial of any material identified by the Government in the past year. As a final word, the Court notes that Defendants filed the instant motion fifty days after the established deadline to submit motions *in limine.* This case is scheduled for trial to commence in a matter of weeks. At this point, the time of the parties and the Court would be more productively used preparing for trial rather than crafting and responding to new motions. In consequence, the Court will not accept the filing of any additional motion from either party unless specifically authorized following a request for a pretrial conference. Accordingly, Defendants' motion is DENIED.

### III. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Docket No. 300), of defendants Rubin/Chambers, Dunhill Insurance Services, Inc.; David Rubin; Zevi Wolmark a/k/a Stewart Wolmark; and Evan Andrew Zarefsky, to exclude all deals, witnesses and exhibits identified after January 18, 2011 is **DENIED.**

**SO ORDERED**

---

2. *Baum,* too, involved prior bad act evidence offered to show a non-propensity purpose, though it predated the Federal Rules of Evidence and therefore did not invoke Rule 404(b). *See* 482 F.2d at 1329. The heightened concern for prejudice related to prior bad acts evidence evinced by the notice requirement in Rule 404(b) and present in *Baum* is simply absent here, where Defendants' motion seeks the exclusion of relevant facts intrinsic to the alleged conspiracies.